BETTMAN, Collector of Internal Revenue, v. WARWICK.

(Circuit Court of Appeals, Sixth Circuit.	March 5, 1901.)

No. 878.

1. INTERNAL REVENUE—TAX ON FUNCTIONS OF STATE GOVERNMENT—LIMIT OF FEDERAL AUTHORITY.

The United States and the states act separately and independently of each other in the field within which each is sovereign, and neither have power to impose a tax which will interfere with the exercise of the sovereignty of the other within their own sphere, either by taxing their functions or the means by which they are exercised. A power in the federal government to exact a tax upon the right to qualify, under a state law, for the performance of the duties of a state office, is inconsistent with the existence of any supreme governmental authority in the state, and the converse is true as regards the power of the state to tax the means employed by the federal government to carry into execution the powers vested in it by the constitution.

2. SAME—STAMP TAX—BOND OF STATE OFFICER.

A stamp tax imposed by the United States upon a bond required by a state from an officer as a prerequisite to the exercise of the duties of his office is, in necessary legal effect, a tax upon the officer's right to qualify, and upon the exercise by the state of its governmental functions, and the fact that the tax is required to be paid before the officer has qualified is unimportant.

3. SAME—BOND OF NOTARY PUBLIC—WAR REVENUE ACT OF 1898.

A notary public, appointed under the laws of a state by the governor, is a state officer, employed in the exercise of functions belonging to it in its governmental capacity, and a bond which he is required to execute for the faithful discharge of the duties of his office, as a condition to his qualification, is an instrument exempt from the stamp tax imposed by the war revenue act of 1898, within the plain meaning of the proviso to Schedule A, exempting states in the exercise of functions belonging to them in their ordinary governmental capacity.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Edward Moulinier, for plaintiff in error.
Walter W. Warwick, in pro. per.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge. This is an action to recover an alleged illegal tax collected by and paid under protest to the defendant. The suit was brought before a justice of the peace for the state of Ohio, and removed into the court below, under section 643 of the Revised Statutes of the United States. The petition, which constituted the pleading under Ohio practice, stated that the plaintiff was a citizen of Ohio, and that the defendant was the collector of internal revenue for the First collection district of the state of Ohio; that on November 28, 1898, petitioner was duly appointed and commissioned, by the governor of Ohio, a notary public, and entered into bond, as required by the law of Ohio, in the sum of $1,500, conditioned for the faithful performance of the duties of his said office, and has since that date held the office and performed the duties of a notary public. The petition then proceeds as follows:

"Plaintiff says that on or about the 23d day of January, 1899, the said bond was returned to him by the said governor, with the request that he at once affix thereto a United States internal revenue stamp of the denomination of fifty cents, in accordance with the demands of the officers of the United States charged with the collection of the internal revenue; that plaintiff was informed by the defendant, acting as collector of internal revenue, that a tax of fifty cents must be paid by this plaintiff upon this bond; that, unless the same was then paid, he, the defendant, would institute proceedings against this plaintiff for the collection of the tax, as well as a penalty for nonpayment; that thereupon, in order to avoid such threatened action upon the part of the defendant, plaintiff, on the 23d day of January, 1899, paid, under protest, to the defendant, acting as collector of internal revenue, the sum of fifty cents, receiving therefor an internal revenue stamp of the value of fifty cents, which plaintiff affixed to said bond. Plaintiff says that on or about the 24th of January, 1899, he made application to the commissioner of internal revenue to have said sum of fifty cents refunded, but that said commissioner, on the 4th day of February, 1899, refused to direct the payment of said amount, and disallowed and rejected plaintiff's claim. Plaintiff says that said bond was not subject to the tax of fifty cents demanded by the defendant and collected from this plaintiff, nor was the plaintiff liable to any tax on account of the execution of said bond; that the said sum of fifty cents was illegally and unjustly collected from the plaintiff by the defendant, to the damage of the plaintiff in the sum of fifty cents. Wherefore plaintiff prays judgment against the defendant for fifty cents and for his costs."

The defendant demurred to the petition as not stating any ground of action. This demurrer was overruled, and judgment rendered against the defendant, he refusing to plead further. The opinion of Judge Thompson upon the question of law raised by the demurrer is reported in 102 Fed. 127. The defendant, Bernhard Bettman, has sued out this writ of error.

The provision of law under which the collector required the defendant in error to affix a stamp to his official bond is found in Schedule A of the act of June 13, 1898, being an act entitled "An act to provide ways and means to meet war expenditures, and for other purposes," and is in these words:

"Bond: For indemnifying any person or persons, firm or corporation, who shall have become bound or engaged as surety for the payment of any sum of money, or for the due execution or performance of the duties of any office or position, and to account for money received by virtue thereof, and all other bonds of any description, except such as may be required in legal proceedings, not otherwise provided for in this schedule, fifty cents."

This provision is probably broad enough to include within its terms every class of official bonds, whether executed by persons holding office under the federal or state governments. For the defendant in error, it is insisted that bonds made by state or municipal officials, as a condition to the exercise of their duties, are exempted from the broad terms of the provision set out by the provision of section 17 of the same act, which is as follows:

"Provided, That it is the intent hereby to exempt from the stamp taxes imposed by this act such state, county, town or other municipal corporations in the exercise only of functions strictly belonging to them in their ordinary governmental, taxing or municipal capacity."

A notary public is a well-known public official, whose duties are both administrative and judicial. In Ohio he is appointed by the governor for a term of three years, and receives a commission upon

which he is required .to indorse an oath of office. Before entering upon the duties of his office, he is required to give bond to the state, with sureties to be approved by the governor, conditioned for the faithful discharge of the duties of his office. He is required to use an official seal; has authority to protest and give notice of nonpayment or acceptance of commercial paper; administer all the oaths required by law; to take and certify acknowledgment of conveyances, powers of attorney, etc. That he is an officer of the state, engaged in the administration of the law of the state, and that he exercises most important public functions by authority of the state, cannot be denied. If a tax may be lawfully collected from a notary public, it may be exacted from every other official of the state who is required to give a bond as a condition precedent. That his services are compensated by fees and not by a salary, is of no importance. Many more important officials of the state are paid by fees. It is for the government which appoints him to determine how he shall be paid, and he is no less a governmental official because paid by fees for services rendered than if paid a stipulated salary out of the treasury of the state.

The test as to whether a notary is engaged in the exercise of the governmental powers of the state does not depend upon how his compensation is provided. That is a matter for legislative regulation, and in no wise affects the nature or powers of the official who is so compensated. In Freedman v. Sigel, 10 Blatchf. 327, and Fed. Cas. No. 5,080, a tax upon the salary of a state judge was sought to be sustained upon the ground that his salary was fixed by the supervisors of the county, and paid out of the county treasury, and not by the state. Judge Shipman held that he was, nevertheless, a state official, and his salary exempt from federal taxation, although fixed and paid by a county of the state.

For the government it has been urged that "a tax on bonds required before a person can enter on the duties of a state office is not a tax on the functions of a state government." This is said to be the ground upon which the commissioner of internal revenue has required the exaction of the stamp tax from state officials required to give bonds as a prerequisite to qualification, and we have been cited to various rulings, made by the commissioner, which tend to confirm this as the ground upon which the plaintiff in error exacted the tax in question. To this distinction we cannot assent. A tax exacted upon a bond required by the state from an official as a prerequisite to the exercise of the duties of the office is, in necessary legal effect, a tax upon the appointee's right to qualify as an official of the state. If congress has the power to exact such a tax from a notary public, it has the power to exact it from every official appointed by a state, a county, or other subdivision of the state. If it may lawfully exact a tax of 50 cents as a tax upon the right of qualifying, it may exact $50, $500, or any sum it may see fit. The power to tax involves the power to destroy. What is there to restrain the imposition of such a tax as will prohibit qualification for any state office? The case of Bank v. Fenno, 8 Wall. 533, 19 L. Ed. 482, furnishes an illustration of the destructive power of a law-

ful tax. The right to impose a tax upon the right to qualify under a state law to fill a state office thus involves the power to destroy the supremacy of the states in respect of the exercise of those powers and of that authority which by both implication and express constitutional recognition remains with the states. Can it be that that which the one government has the power to create the other has the power to destroy? Under our complex form of government, we have two sovereignties existing with the same territorial limits. The United States and the states united under the constitution act separately and independently of each other in the field within which each is sovereign. The federal government, within the sphere of its delegated authority, is supreme, but the states are equally so when acting within the limits of their reserved and ungranted powers. Among the powers not delegated, but reserved, to the states are most of those governmental powers which most closely touch and affect the lives, conduct, and business of the people.

Is the existence of a power in the federal government to exact a tax upon the right to qualify, under a state law, for the performance of the duties of a state office, at all consistent with the existence of any supreme governmental authority in the state? If the qualification of a state official can be thus prevented or controlled, is there any real supremacy of the states within the sphere of their reserved and ungranted powers? The question is the counterpart of that which arose when the state sought to tax the operations and instrumentalities of the federal government.

In the great case of McCulloch v. Maryland, 4 Wheat. 316, 429, 4 L. Ed. 579, 607, Chief Justice Marshall, in vindicating the conclusion that "the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operation of the constitutional laws enacted by congress to carry into execution the powers vested in the general government," laid down a rule, in respect to the power of taxation, which has application here. After saying that "the sovereignty of a state extends to everything which exists by its authority or is introduced by its permission, but does not extend to the means which are employed by congress to carry into execution powers conferred on that body by the people of the United States," he said:

"If we measure the power of taxation residing in a state by the extent of sovereignty which the people of a single state possess and can confer on its government, we have an intelligible standard, applicable to every case to which the power may be applied. We have a principle which leaves the power of taxing the people and property of a state unimpaired, which leaves to a state the command of all its resources, and which places beyond its reach all those powers which are conferred by the people of the United States on the government of the Union, and all those means which are given for the purpose of carrying those powers into execution. We have a principle which is safe for the states and safe for the Union. We are relieved, as we ought to be, from clashing sovereignty; from interfering powers; from a repugnancy between a right in one government to pull down what there is an acknowledged right in another to build up; from the incompatibility of a right in one government to destroy what there is a right in another to preserve."

In People v. Tax Com'rs, 2 Black, 620, 635, 17 L. Ed. 451, 456, this rule was quoted and reaffirmed, the court, by Justice Nelson, saying:

108 F.—4

"All will agree that this is the enunciation of a true principle, and it is only by a wise and forbearing application of it that the operation of the powers and functions of the two governments can be harmonized. Their powers are so intimately blended and connected that it is impossible to define or fix the limit of the one without at the same time that of the other, in respect to any one of the great departments of government. When the limit is ascertained and fixed, all perplexity and confusion disappear. Each is sovereign and independent in its sphere of action, and exempt from the interference or control of the other, either in the means employed or functions exercised, and, influenced by a public and patriotic spirit on both sides, a conflict of authority need not occur or be feared."

Upon the principles settled by McCulloch v. Maryland, it was held in Dobbins v. Commissioners, 16 Pet. 435, 10 L. Ed. 1022; that it was not competent for a state to levy a tax upon the salary or emoluments of an officer of the United States; and in Weston v. City Council, 2 Pet. 449, 7 L. Ed. 481, it was held that a state could not lay a tax upon stocks or bonds of the United States in the hands of a citizen of the state. None of these cases rest the exemption of the means and agencies employed by the federal government from state taxation upon any express provision of the constitution. The exemption depends upon the implication that those agencies and instrumentalities adopted by the government in the execution of its granted powers must, in the very nature of things, be beyond the control of any other sovereignty whatever. If this were not so, the federal government would not be supreme, even in the sphere of the powers assigned to it. The principle is, that the power to tax is the power to control, the power to destroy, and that any government is at the mercy of another which has the power to tax the instrumentalities by which it governs. These principles were applied in Buffington v. Day, 11 Wall. 113, 20 L. Ed. 122, where the question was whether the salary of a state judge was subject to the exactions of the income tax law of the United States. After considering the duality of the governments under the federal system, the court said:

"The supremacy of the general government, therefore, so much relied on in the argument of the counsel for the plaintiff in error, in respect to the question before us, cannot be maintained. The two governments are upon an equality, and the question is whether the power 'to lay and collect taxes' enables the general government to tax the salary of a judicial officer of the state, which officer is a means or instrumentality employed to carry into execution one of its most important functions, the administration of the laws, and which concerns the exercise of a right reserved to the states. We do not say the mere circumstance of the establishment of the judicial department, and the appointment of officers to administer the laws, being among the reserved powers of the state, disables the general government from levying the tax, as that depends upon the express power 'to lay and collect taxes'; but it shows that it is an original inherent power, never parted with, and in respect to which the supremacy of that government does not exist, and is of no importance in determining the question; and, further, that being an original and reserved power, and the judicial officers appointed under it being a means or instrumentality employed to carry it into effect, the right and necessity of its unimpaired exercise, and the exemption of the officer from taxation by the general government, stand upon as solid a ground, and are maintained by principles and reasons as cogent, as those which led to the exemption of the federal officer in Dobbins v. Commissioners from taxation by the state; for, in this respect,—that is, in respect to the reserved powers,—the state is as sovereign and independent as the general government. And if the means and instrumentalities employed by that gov-

ernment *to carry into operation the powers granted to it are,* necessarily, and for the sake of self-preservation, exempt from taxation by the states, why are not those of the states, depending upon their reserved powers, for like reasons equally exempt from federal taxation? Their unimpaired existence in the one case is as essential as in the other. It is admitted that there is no express provision in the constitution that prohibits the general government from taxing the means and instrumentalities of the states, nor is there any prohibiting the states from taxing the means and instrumentalities of that government. In both cases the exemption rests upon necessary implication, and is upheld by the great law of self-preservation; as any government whose means employed in conducting its operations, if subject to the control of another and distinct government, can exist only at the mercy of that government. Of what avail are these means, if another power may tax them at discretion?"

Upon the same general principle it was decided in U. S. v. Railroad Co., 17 Wall. 322, 21 L. Ed. 597, that a tax could not be lawfully assessed upon the interest of the bonds of the Baltimore & Ohio Railroad Company held by the city of Baltimore. Such interest constituting, in part, the revenue of the city,—a corporation exercising a portion of the sovereign power of the state.

That it is often a difficult question whether a tax imposed by the general government or by a state government is one which, in fact, invades the domain of the other, may be conceded. But, in respect to the tax here involved, there can be no doubt but that a tax imposed upon the official bond required by the state law to be executed by an appointee to a state office, conditioned for the faithful discharge of the duties imposed upon him by the state, is a tax which necessarily embarrasses and impedes the state's freedom in the due exercise of its governmental authority as a state. Whether the tax be imposed before or after qualification is not important. It is a burden placed upon the right of qualification, and is, by necessary implication, forbidden. That congress recognized the principle upon which any exemption from the taxing power of congress must rest is very obvious, from the language of the exemption clause inserted in the very forefront of the war revenue act of 1898. The bond which the defendant in error was required to execute as a condition to qualification was a bond which the state of Ohio imposed in the exercise of a governmental function, and was an instrument exempt from the taxes imposed by the stamp act, within the plain meaning of the exemption clause of the seventeenth section, set out heretofore. We quite agree with Judge Thompson, who heard the case below, in holding that the tax was illegally demanded from defendant in error, and that the plaintiff in error cannot justify its collection under the law. The judgment of the court below is accordingly affirmed.