## HARMAN v. HELVERING.
### No. 309.

Circuit Court of Appeals, Second Circuit.
June 14, 1937.

Mark Eisner, of New York City (Ferdinand Tannenbaum and Walter J. McNichols, both of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Howard P. Locke, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

**L. HAND, Circuit Judge.**

This is an appeal from an order of the Board of Tax Appeals refusing to expunge a deficiency assessment levied against the taxpayer upon part of his income for the year 1932. The question is whether the part so assessed was immune from taxation as income of an "official" or "employee" under article 643 of Regulations 77. The petitioner is an official stenographer of the Supreme Court of New York, appointed under section 161 of the Judiciary Law of that State (Consol.Laws N.Y. c. 30). As such he is an officer of the court (section 290); his notes are part of the "proceedings in the cause" (section 292); he must take and file the constitutional oath of office (section 294); and he must take full stenographic notes of everything that takes place in court when asked to do so (section 295), and furnish a copy without charge to the presiding judge (section 300). For these services he receives a salary fixed by statute, which the Commissioner conceded to be exempt from income tax. The income on which he assessed the tax arose as follows: By virtue of his office the taxpayer is compelled to furnish a copy of his minutes to any party to the action (section 301, 302, 303), and for the service "except where otherwise agreed" he may charge "a fee of ten cents for each folio" (section 1544, Civil Practice Act). During the year 1932 he received net fees from litigants for furnishing such copies of $3,476.66, made up in part of payments made by the City of New York at ten cents a folio, and in part by individuals at higher rates. The Commissioner held that these services were "not an essential governmental function," and that the income from them was therefore not exempt. The Board thought that the income was not "strictly compensation derived from the State or for services performed for the State" and affirmed the ruling.

Even if it were conceded that to furnish copies of all that takes place upon a trial is "an essentially governmental function," in order to upset the tax, either we must assume that if the taxpayer paid on this part of his income, his statutory salary would have to be higher; or we must say that it was immaterial whether the state's treasury was affected or not. As to the first, before deciding to accept a public position an incumbent undoubtedly considers the total returns from all sources, balancing that part which may be taxed against that which may not. But that reasoning, pressed to a conclusion, would exempt his income from all sources, for if he need pay no taxes at all, he could get on with a smaller public salary. Such refinements are too fantastic for practical consideration. That alternative being eliminated, it is tempting to say that, as the state's treasury is not concerned, the tax must necessarily be valid. But the cases will scarcely bear out such a test, though, as we have just said in Helvering v. Curren, 90 F.(2d) 621, handed down herewith, no one has ever given any other rational reason for the whole doctrine. It was repudiated in Bettman v. Warwick, 108 F. 46 (C.C.A.6), and we refused to base our decision upon it in McLoughlin v. Commissioner, 89 F.(2d) 699. In the case at bar we prefer therefore to rest our ruling on the theory that the service was not "essentially governmental" at all. It is true that the original shorthand minutes were "part of the proceedings in the cause" section 292; and that made them, we assume, a substitute for the judge's minutes at common law, on which the bill of exceptions must be based. In a sense, therefore, furnishing a copy of them to litigants might be said to be a part of the administration of justice; appeals are not possible without them—we assume that if the party brought his own stenographer into court, the judge would not recognize his notes. Yet though that be true, the function of preparing such a copy is not necessarily "governmental," like providing courts of justice. Buffington v. Day, 11 Wall. 113, 20 L.Ed. 122. For example, it is essential that witnesses be summoned to a trial, yet the witnesses would be taxable for their fees. Attorneys are as necessary as judges; but no part of their incomes is exempt. We are not clear that if a clerk kept his fees for copying papers as a perquisite added to a statutory salary, they would be exempt. A distinction might be made between an office paid altogether by fees that cover all services, including those "essentially governmental," and an office like this, where the state's treasury pays for the truly public services, and individuals pay for what they get. Bettman v. Warwick, supra, does not stand in the path; the tax there was on the notary's qualifying bond.

We class these services as private conveniences to suitors, no different really from printing appeal papers, or any other necessary expense of the suit. The administration of justice consists of the settlement

of disputes, and the suitors must present their sides; the state furnishes the lists, and the heralds and the judges, but the combatants bring their arms. Finally, so far as any part of the income came from the City of New York, it is plain that the taxpayer was like any other person who furnished it with supplies.

Order affirmed.