Füld, J.
After the acquittal of a defendant in a criminal case, a newspaper reporter sought to obtain a transcript of the trial judge’s charge to the jury. His request refused, his employer brought this proceeding to effect its delivery. The courts below dismissed the petition initiating the proceeding and we granted leave to appeal because of the importance of the questions presented.
In 1955, a probationary police officer, named Surrey, was charged with the crime of manslaughter in the first degree arising out of the fatal shooting of a fifteen-year-old boy. He was tried in the County. Court of Kings County before County *682 Judge Leibowitz aud a jury. Tbe case bad received considerable newspaper publicity and, following tbe jury’s verdict of not guilty, New York Post' Corporation, tbe publisher of a daily newspaper in New York City, requested a transcript of tbe official stenographic notes of tbe judge’s charge to tbe jury. Although tbe court stenographer who bad taken tbe minutes at first agreed to furnish tbe requested transcript, be later refused to do so because — according to tbe allegations of tbe petition which at this juncture are to be deemed admitted— tbe trial judge “ has forbidden and continues to forbid [him] from complying with [tbe paper’s] demand.” When further efforts to obtain a copy of tbe charge failed, tbe New York Post instituted this proceeding, pursuant to article 78 of tbe Civil Practice Act, in which it sought an order (1) requring tbe stenographer to furnish a transcript of tbe charge, upon payment of tbe required fees, (2) restraining tbe trial judge from giving any direction forbidding tbe stenographer to furnish tbe transcript and (3) requiring tbe judge to withdraw any such direction previously given. Tbe judge and tbe stenographer, respondents herein, moved, by way of cross motions, to dismiss tbe petition. As already noted, tbe court at Special Term, denying tbe relief sought by the petitioner, granted tbe respondents’ motions to dismiss and tbe Appellate Division unanimously affirmed.
We are all agreed that fundamental considerations of public policy demand that court proceedings in a publicly held trial be open to tbe fullest public scrutiny, so long as tbe case is not one in which preservation of secrecy in respect of tbe court records has been recognized by law. (Cf. Danziger v. Hearst Corp., 304 N. Y. 244, 248, 249; Matter of United Press Assns. v. Valente, 308 N. Y. 71, 77.) It has been aptly observed that “ A trial is a public event” and “What transpires in tbe court room is public property.” (Craig v. Harney, 331 U. S. 367, 374.) Tbe function of publicity, especially in tbe form of newspaper reporting and comment, as “an effective restraint on possible abuse of judicial power ” is, indeed, one of tbe fundamental safeguards of a free society. (Matter of Oliver, 333 U. S. 257, 270; see Times-Picayune v. United States, 345 U. S. 594, 602.)
Tbe trial of tbe action, tbe prosecution against Surrey, was open to tbe public and no attempt was made by tbe court to limit or restrict free attendance by tbe press or other members of tbe public. (Cf. Judiciary Law, § 4.) Representatives of tbe press, *683 as well as the public generally, were admitted to the trial and were in a position to see, hear and report everything that there transpired. Since the trial resulted in an acquittal, neither the defendant nor the prosecution presumably had any occasion to request a transcript of the stenographic minutes of the proceedings. Some question, however, arose with regard to the trial judge’s charge to the jury, and the petitioner accordingly endeavored to obtain a copy of it.
The courts below have held that existing statutes confer a right to obtain a transcript of the charge only upon the judge, the defendant or his attorney and the prosecuting attorney. It was the view of the Appellate Division that, while the stenographer was free to furnish a copy of the charge to any other person if he chose so to do, one not a party to the action possesses no clear legal right to obtain such a transcript, if the stenographer refuses to furnish it, even upon payment of the prescribed fees.
We address ourselves first to that branch of the petition which seeks relief against the county judge, respondent Leibowitz. In our view, he clearly exceeded his power in undertaking to direct the stenographer not to furnish any transcript of the charge to the appellant. Section 301 of the Judiciary Law authorizes a judge of the particular court to direct the stenographer to write out the original stenographic notes at length. The statute does not, however, empower him to prohibit the stenographer from freely making available transcripts of his notes to any person requesting them, and such authority cannot be held to be a necessary corollary of the power to direct transcription or an inherent attribute of the jurisdiction of either the court or the judge. (Cf. Lawrence Constr. Corp. v. State of New York, 293 N. Y. 634, 639-640.)
It is urged, nevertheless, that the county judge was acting in an administrative rather than a judicial capacity, and that relief in the nature of prohibition, such as is sought by the petitioner, is available only to reach a case of usurpation of judicial or quasi-judicial authority and may not, therefore, be here invoked. However, in a proceeding under article 78 of the Oivil Practice Act, ‘ ‘ when a suitor shows a right to some relief the court grants the relief to which he is entitled, unrestricted by the form of the proceedings brought by the aggrieved person.” (See Matter of Newbrand v. City of Yonkers, 285 N. Y. 164, *684 174.) Whether or not an order in the nature of prohibition is an appropriate remedy on the facts of this case need not detain us. There is ample authority that relief in the nature of mandamus may he granted to compel a public body or officer to refrain from taking particular administrative action in contravention of a clear mandate of law, even though the immediate relief sought is of a preventive rather than an affirmative nature. (See, e.g., Matter of Reynolds, 202 N. Y. 430, 442; Matter of Lewis v. Carter, 220 N. Y. 8; Matter of McCabe v. Voorhis, 243 N. Y. 401; Matter of Koenig v. Flynn, 258 N. Y. 292; Matter of Andresen v. Rice, 277 N. Y. 271; People ex rel. Conklin v. Boyle, 98 Misc. 364, affd. 178 App. Div. 908.)
The Constitution of this state explicitly mandates that “ judicial opinions or decisions shall nevertheless be free for publication by any person ” (art. VI, § 22). The trial judge’s charge to the jury may properly be regarded as a “ decision ” within the ambit of that provision, since the charge embodies the law of the case as decided and declared by the trial court. (See Leonard v. Home Owners' Loan Corp., 297 N. Y. 103, 104; Buckin v. Long Is. R. R. Co., 286 N. Y. 146, 149; Sharp v. Hoffman, 79 Cal. 404, 408.) The clear import of the constitutional mandate is that neither the legislature nor the courts may unreasonably curtail or restrict free access by all persons to judicial opinions and decisions. (Cf. Nash v. Lathrop, 142 Mass. 29.) No other rule is conceivable in a society nurtured on freedom of discussion of matters of public interest. Without access to the official records, the press might well be hampered in reporting opinions or decisions for fear of transgressing the limitations imposed by the law of libel, that the report be a “ fair and true” one (Civ. Prac. Act, § 337). To permit a judge to prohibit the stenographer from transcribing or furnishing copies of decisions rendered by him would thwart and tend to nullify the basic purpose of the constitutional safeguard.
Since, then, relief in the nature of mandamus is an appropriate remedy to compel the respondent Leibowitz to desist from taking the action charged against him in the petition, it necessarily follows that his motion to dismiss was erroneously granted.
The question remains whether the petitioner has a clear legal right to compel the stenographer, respondent Strimpel, to furnish a transcript of the charge to the jury.
*685 The statutory provisions relating to court stenographers do not, in terms, provide the answer. Section 301 of the Judiciary Law directs that “ The original stenographic notes must be written out at length by the stenographer, if a judge of the court so directs, or if the stenographer is required so to do, by a person entitled by law to a copy of the same, so written out.” In the absence of such a direction or requisition, section 301 goes on to provide, ‘ ‘ the stenographer is not bound so to write them out.” And sections 300 and 302 of the Judiciary Law specifically confer upon a party to the litigation the right to receive a transcript of the minutes from the stenographer upon payment of the fees allowed by law. The courts below have narrowly construed the reference in section 301 to “ a person entitled by law to a copy of the same ” as encompassing only a party or his attorney, the trial judge and, in a criminal case, the prosecuting attorney.
Section 66 of the Public Officers Law is the other provision that bears on the subject. It directs that
“ A person, having the custody of the records or other papers in a public office, within the state, must, upon request, and upon payment of, or offer to pay, the fees allowed by law, * * * diligently search the files, papers, records, and dockets in his office; and either make one or more transcripts therefrom, and certify to the correctness thereof, and to the search, or certify that a document or paper, of which the custody legally belongs to him, can not be found.”
It is urged, however, that the stenographer’s notes may not be regarded as “ records or other papers in a public office ” within the meaning of section 66, unless they are filed with the clerk pursuant to order of the court (Judiciary Law, §§ 13, 296). It is further contended that the term “transcript,” as used in the statute, does not extend to the writing out of the original stenographic notes.
In construing statutory provisions, the spirit and purpose of the statute and the objectives sought to be accomplished by the legislature must be borne in mind. “ The legislative intent is the great and controlling principle. Literal meanings of words are not to be adhered to or suffered to ‘ defeat the general purpose and manifest policy intended to be promoted ’.” (People v. Ryan, 274 N. Y. 149, 152; see, also, Matter of United Press *686 Assns. v. Valente, supra, 308 N. Y. 71, 83-84; Matter of River Brand Rice Mills v. Latrobe Brewing Co., 305 N. Y. 36, 43-44.) Turning to section 66 of the Public Officers Law, the provision before us, there is no doubt that it expresses a strong legislative policy to make available to public inspection and access all records or other papers kept “ in a public office,” at least where secrecy is not enjoined by statute or rule. Effectuation of the policy in favor of full publicity accordingly demands the broadest possible interpretation of the scope and content of that section, so far as some overriding consideration of policy does not forbid.
It requires no straining to reach the conclusion that the office of an official court-appointed stenographer is a “ public office ” within the meaning of section 66. Each such stenographer is in terms designated as “an officer of the court or courts, for or by which he is appointed ” (Judiciary Law, § 290), and is required to subscribe and file a constitutional oath of office (§ 294). His duties are to a large extent regulated by the statute (§§ 295, 300, 301, 302), and his notes are treated as “ part of the proceedings in the cause ” (§ 292). He must file his original notes with the clerk, if so directed by the court or judge (§§ 13, 296), and, in the absence of such filing, he is required to preserve his notes for two years after the trial or hearing (§ 297). If he dies, “ or [if] his office becomes otherwise vacant, ’ ’ the original stenographic notes ‘‘ must be delivered to his successor in office ” if they have not been previously filed (§ 298). There is thus little doubt that an official court-appointed stenographer is a “ public officer,” and that his office is a “ public office,” insofar as the statute before us is concerned, and nothing to the contrary was decided in Harmon v. Helvering (90 F. 2d 622, cert. denied 303 U. S. 650) upon which the Appellate Division relied. That case involved merely an issue of taxability under early Internal Revenue Code provisions, and in no way cast doubt upon the status of the stenographer as a “ public officer ” in the performance of his function of taking stenographic notes of court proceedings.
There can likewise be little doubt that the stenographer’s original stenographic notes may reasonably be regarded as “ records or other papers ” of which he has custody in his office. The statutory description is a broad and inclusive one, and, indeed, the court below recognized that such notes would partake *687 of the character of “records or other papers”, -within the compass of the section, once they were filed in the clerk’s office pursuant to direction of the court or judge. Nor is there any reason why the term “ transcripts ” as used in section 66 may not be given the meaning it has in section 300 of the Judiciary Law, so as to embrace the writing out of the stenographer’s original minutes.
We need not, however, concern ourselves with the general question of transcription of stenographic notes of court proceedings. The specific issue presented in this case, as noted above, relates to a transcript merely of the charge given by the judge to the jury. Insofar as the public’s access to such a charge is concerned, the pertinent statutes must be read in consonance with the constitutional provision, adverted to above, establishing the principle of freedom of publication by any person of all “ judicial opinions or decisions ” (N. Y. Const., art. VI, § 22). So read, the statutes entitle any member of the public to obtain a copy of the trial judge’s charge upon payment of the fees allowed by law.
A substantial constitutional question would be presented were the legislature to be taken to have discriminated between parties to the particular litigation and the general public as regards access to such a charge, since, as we have observed, the charge must be regarded as a “ decision ” within the meaning of the constitutional provision. It is a well-settled canon of construction that a statute ‘£ should be construed when possible in manner which would remove doubt of its constitutionality.” (People v. Barber, 289 N. Y. 378, 385.) The legislature has in no' way expressly forbidden a transcript of the charge to be furnished to persons other than parties to the action. On the contrary, it has directed that a transcript of the original stenographic notes be furnished by the stenographer to “ a person entitled by law to a copy of the same ” (Judiciary Law, § 301). That provision makes it reasonable to infer that the intention was to embrace persons other than parties. Accordingly, to remove the doubts on the score of constitutionality that would be engendered by the restrictive interpretation adopted by the courts below, section 301 of the Judiciary Law and section 66 of the Public Officers Law should be interpreted as entitling any member of the public to obtain a transcript from the stenographer, at least, of the trial judge’s charge to the jury, upon payment of the prescribed fees.
*688 Matter of United Press Assns. v. Valente (supra, 308 N. Y. 71), involving as it did an entirely different issue, has little relevancy to the case before us. The question there presented was whether the right to a public trial in a criminal case could be independently invoked by persons other than the defendant, for whose protection that right was primarily provided, in possible hostility to the rights of the defendant itself. In this case, on the other hand, there is no possible conflict between the position asserted by the petitioner and the rights of the defendant. Indeed, the trial had been concluded, and neither the defendant nor the People could in any way be prejudiced by allowing the petitioner or any other member of the public to have a copy of the charge.
The fear expressed, that stenographers will be overwhelmed by a multitude of requests for transcripts from newspapers and other persons not parties to the action, impresses us as groundless. Should there be numerous requests for such transcripts, the stenographer would necessarily be vested with the discretion to work out a convenient schedule to avoid undue interference with the efficient execution of his over-all duties.
The order appealed from should be reversed, the motions to dismiss the petition denied, without costs, and the matter remitted to Special Term for further proceedings not inconsistent with this opinion.