opinion of the court
Leo F. Hayes, J.
In July, 1982, Wells Fargo mistakenly deposited one and a half million dollars to the account of a Syracuse University student, Talal Saud, and his wife, Al-Anound N. Khuthailia, both of whom are citizens of Saudi Arabia. By the time Wells Fargo discovered the error defendants had already moved into a house purchased with a portion of the misdeposited money.
Defendants were not the least bit surprised when they discovered an extra million and a half dollars in their account! They figured a rich relative in Saudi Arabia had sent them a belated wedding present.
When defendants refused to return the money, Wells Fargo sued them for conversion and in May of 1983 recovered a judgment for $1,629,578.32. In November, 1983, the Sheriff executed upon and sold the residence. Defendants want to keep the $10,000 of the proceeds of that sale, citing CPLR 5206, commonly referred to as the homestead exemption.[1] Wells Fargo thinks the entire proceeds should be applied to its judgment.
*1073 Both sides feel that the answer to this question turns on the requirement that the homeowner actually occupy the house in order to qualify for the homestead exemption.[2] Wells Fargo argues that defendants lost any claim to the homestead exemption in June, 1983, when they returned to Saudi Arabia for the summer. Defendants contend they never intended to abandon the house, nor their right to the exemption.
Frankly, I find these arguments beside the point. The answer lies not in the subtle workings of the homestead exemption, but rather in recalling that historical canon long recognized in the Judeo-Christian tradition of our system of justice that he who finds and keeps property he knows belongs to another must restore the property involved (Leviticus, ch 6, verse 4). I cannot believe that the Legislature intended to abrogate this time-honored principle, for to do so would reward converters who — through the act of conversion — are able to become homeowners. Creditors who willingly advance the purchase price may recover the entire proceeds of sale (CPLR 5206, subd [a]); those who have unwittingly supplied the money to buy the property can fare no worse!
A logical distinction must be made between those who become homeowners by using their own resources and those who attain that status only through the mistaken use of another’s money. Having acquired title under circumstances that they ought not to retain its beneficial interest, defendants might more appropriately be thought of as trustees rather than homeowners — as if a constructive trust had been imposed. The drafters of the homestead exemption would no doubt be mortified at the suggestion that their legislation might profit these defendants.
The literal meaning of the words used will not be permitted to defeat the general purpose and manifest policy of *1074 a statute (People v Ryan, 274 NY 149; Matter of New York Post Corp. v Leibowitz, 2 NY2d 677; McKinney’s Cons Laws of NY, Book 1, Statutes, § 111). Circumstances may have landed defendants within the letter of the homestead exemption, but that which is within the letter of the statute is not within the statute unless it be within the intention of the lawmakers (McKinney’s Cons Laws of NY, Book 1, Statutes, § 111; People v Adams, 176 NY 351, affd 192 US 585; Schieffelin v Lahey, 243 NY 102; Matter of Astman v Kelly, 2 NY2d 567).
Accordingly, I hold that the defendants are not entitled to the benefits of CPLR 5206.

. The statute provides:
“(a) Exemption of homestead. Property of one of the following types, not exceeding ten thousand dollars in value above liens and encumbrances, owned and occupied as a *1073 principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof:
“1. a lot of land with a dwelling thereon”. (CPLR 5206, subd [a].)

. The statute provides:
“(c) Suspension of occupation as affecting homestead. The homestead exemption ceases if the property ceases to be occupied as a residence by a person for whose benefit it may so continue, except where the suspension of occupation is for a period not exceeding one year, and occurs in consequence of injury to, or destruction of, the dwelling house upon the premises.” (CPLR 5206, subd [c].)