OPINION OF THE COURT
Robert C. Mtjlvey, J.
The court finds:
1. that the defendant City of Ithaca lacks standing to seek a declaratory judgment regarding the constitutionality of the Domestic Relations Law;
2. that the defendant New York State Department of Health (DOH) was acting within its authority in issuing the advisory letter of February 27, 2004;
3. that the Domestic Relations Law does not authorize the issuance of marriage licenses to same-sex couples;
*532 4. that the limitation of marriage licenses to opposite-sex couples does not violate the plaintiffs’ rights under the constitutions of the State of New York and the United States.
The court’s reasoning is set forth below.
Background
The plaintiffs are comprised of 25 same-sex couples seeking to obtain marriage licenses from the City Clerk of the City of Ithaca. The City Clerk refused to issue the licenses because she received an advisory letter from the DOH indicating that such licenses were not authorized by law.
The action seeks a judgment declaring that the Domestic Relations Law authorizes the issuance of marriage licenses to same-sex couples, or, in the alternative, that the limitation of marriage licenses to opposite-sex couples renders the law unconstitutional.
The municipal defendants, City Clerk Holcomb and the City of Ithaca, join in the relief sought by the plaintiffs and have interposed cross claims against the DOH to that end.
The Attorney General, on behalf of the DOH, asserts that the Domestic Relations Law does not authorize the issuance of marriage licenses to same-sex couples and is nevertheless constitutional. All parties have moved for summary judgment pursuant to CPLR 3212.
Discussion
1. The City’s Standing
The court finds that the City of Ithaca does not have standing to interpose the cross claims herein.
The City Clerk has a duty to issue marriage licenses to qualified applicants under the general supervision of the DOH. (Domestic Relations Law § 15 [2]; § 23.) Such duty is purely ministerial and the Clerk has no discretion in the issuing of a license. (Kellogg v Kellogg, 122 Misc 734 [1924].) The Clerk’s actions in respect to license applications and recording of information are governed solely by state statute, and are not in furtherance of any role as a representative or agent of the city government.
The City has failed to demonstrate that it has a justiciable stake in the outcome of this proceeding. It contends that it has an abiding interest in and duty to promote same-sex marriage through all lawful means, and that the Clerk’s actions expose it to potential liability. However, it has not shown that, as a mu *533 nicipal corporation, it is aggrieved or even affected by the DOH interpretation of the State’s marriage laws. (See, Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 773 [1991].)
The City cites Matter of Jeter v Ellenville Cent. School Dist. (41 NY2d 283 [1977]) as support for its contention that it has standing to seek statutory interpretation and/or to raise a constitutional challenge. In that case, the Court of Appeals held that units of municipal government may be heard on questions of statutory interpretation, yet they do not have the right to raise constitutional challenges. The exception to that rule, where a municipal challenger asserts that compliance with a state statute will force the violation of a constitutional proscription, is clearly inapplicable here. The examples cited are where the municipal entities act directly (e.g., the expenditure of public money on textbooks for parochial schools) (Board of Educ. v Allen, 20 NY2d 109 [1967]), or where the statute in issue directly impacts the functions of the municipal corporation. The City’s contention that it is exposed to potential liability for money damages is unsupported.
The City Council’s concern is evidenced by the resolution adopted on July 5, 1995, yet presumably the City has not adopted an ordinance on the topic of marriage licenses because it has no authority. The sentiments of the City’s current officeholders are more appropriately furthered by acting as private individuals.
2. DOH Authority
The court finds that the DOH acted within its authority in providing guidance to the City Clerk regarding the application of state law regarding marriage licenses. (Matter of Elcor Health Servs. v Novello, 100 NY2d 273 [2003].) The letter dated February 27, 2004 is an accurate explanation of the law, and is not subject to the rule-making process.
The DOH clearly has authority to supervise the registration and recording of all marriages pursuant to section 23 of the Domestic Relations Law. It has unlimited authority to issue “forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory.” (State Administrative Procedure Act § 102 [2] [b] [iv].)
3. The Domestic Relations Law Does Not Authorize the Issuance of Marriage Licenses to Same-Sex Couples
State law permits only heterosexual marriage. (Levin v Yeshiva Univ., 96 NY2d 484 [2001].)
*534 In a recent ruling declaring that this classification is unconstitutional, the court conceded that both the use of gender-specific terms in multiple sections of the Domestic Relations Law, and the historical context in which the Domestic Relations Law was enacted, indicate that the Legislature did not intend to authorize same-sex marriage. (Hernandez v Robles, 7 Misc 3d 459 [Sup Ct, NY County, Feb. 4, 2005, Ling-Cohan, J.], citing 2004 Ops Atty Gen No. I 2004-1; see also, Matter of Kane v Marsolais, Sup Ct, Albany County, Jan. 31, 2005, Kavanagh, J., Index No. 3473-04; Samuels v New York State Dept. of Health, Sup Ct, Albany County, Dec. 7, 2004, Teresi, J., Index No. 1967-04; Matter of Shields v Madigan, 5 Misc 3d 901 [Sup Ct, Rockland County 2004, Weiner, J.]; Storrs v Holcomb, 168 Misc 2d 898 [1996], dismissed on other grounds 245 AD2d 943 [1997].)
4. The Limitation of Marriage Licenses to Opposite-Sex Couples Does Not Violate the Plaintiffs’ Constitutional Rights a. Equal Protection
The plaintiffs contend that the Domestic Relations Law’s limitation of marriage licenses to opposite-sex couples establishes a classification which violates their right to equal protection under article I, § 11 of the New York Constitution. They assert that this classification is based on gender as well as sexual orientation.
If the classification is based on gender, it must receive heightened scrutiny, requiring the government to prove that it is substantially related to an important governmental interest. (People v Santorelli, 80 NY2d 875 [1992].) If it is based on sexual orientation, it is incumbent upon the plaintiffs to establish that it is not rationally related to any legitimate state interest, i.e., they must negate every conceivable basis which might support the classification. (Affronti v Crosson, 95 NY2d 713 [2001]; Matter of Cooper, 187 AD2d 128 [2d Dept 1993], appeal dismissed 82 NY2d 801 [1993].)
The court finds that the classification is not based on gender. (See, Kane, Samuels and Shields, supra.) Men and women enjoy equal rights to obtain a license to marry a person of the opposite sex; neither sex is advantaged or disadvantaged in the consideration of the license application. Each sex is equally prohibited from precisely the same conduct, i.e., marriage to a person of the same sex.
There is no basis in this record for the court to declare that the plaintiffs are part of a “suspect class” triggering strict scrutiny of the classification.
*535 Therefore the classification must be deemed to be drawn on the basis of sexual orientation. As such it is subject to the rational basis analysis. (Matter of Cooper, supra.) Cooper also establishes that the Domestic Relations Law’s limitation of marriage to opposite-sex couples is rationally related to a legitimate state interest — the preservation of the historic institution of marriage as a union of man and woman, which in turn, uniquely fosters procreation.
In recognizing the authority of Cooper, this court agrees with Justice Teresi in Samuels that sound judicial practice suggests that a judge at the nisi prius level should follow the holding of the Appellate Division of another department where neither that court’s own Appellate Division department nor the Court of Appeals have pronounced a contrary rule on the matter. (See, Matter of Patrick BB., 284 AD2d 636 [3d Dept 2001].) This court respectfully disagrees with the court’s determination in Hernandez that Cooper is not binding. Contrary to Justice Ling-Cohan’s observation, this court notes that the constitutionality of the Domestic Relations Law was specifically raised by the petitioner in Cooper and squarely addressed by the Second Department (Cooper, 187 AD2d at 132 [“(s)pecifically, they argue that this unconstitutional definition directly derives from, and compounds, the State’s unconstitutional conduct in interpreting the relevant provisions of the Domestic Relations Law as prohibiting members of the same sex from obtaining marriage licenses”]).
Although Cooper relied in part on Bowers v Hardwick (478 US 186 [1986]), which was overruled in Lawrence v Texas (539 US 558 [2003]), it remains valid authority for the principle that classifications purportedly based on sexual orientation are subject to the rational basis test. The majority in Lawrence applied the rational basis test in finding that a Texas sodomy law did not further a legitimate state interest. (Id. at 578.) Similarly, in Romer v Evans (517 US 620 [1996]), the Supreme Court applied the rational basis test in striking down Colorado’s constitutional amendment related to sexual orientation.
The defendant DOH asserts the following as legitimate interests of the state:
• ensuring consistency with the federal Defense of Marriage Act and the laws of more than 40 states;
• the preservation of the historic legal and cultural understanding of marriage and to protect opposite- *536 sex marriages because of the long-standing societal benefits they are recognized to provide, including social continuity and economic equity.
The question presented is whether the plaintiffs have demonstrated that the promotion of opposite-sex marriage is not rationally related to any conceivable legitimate state interest. Although the plaintiffs present cogent arguments that same-sex couples are able to become parents by adoption or assisted reproduction, they have not established that the Legislature was irrational in recognizing what is considered a unique and distinct social benefit derived from heterosexual marriage, to wit: natural procreation and child-rearing. The “long-standing societal benefits” cited by the DOH in this case have been analyzed and described at length in Standhardt v Superior Ct. ex rel. County of Maricopa (206 Ariz 276, 77 P3d 451 [2003]) and in Morrison v Sadler (821 NE2d 15 [Ind Ct App 2005]).* No rational basis was seen by the Massachusetts Supreme Judicial Court in Goodridge v Department of Pub. Health (440 Mass 309, 798 NE2d 941 [2003]) or by the Vermont Supreme Court in Baker v State (170 Vt 194, 744 A2d 864 [1999]).
In view of these considerations, this court has no reason to conclude that the Legislature’s limitation of marriage licenses to opposite-sex couples is irrational. It is for the Legislature to determine whether there is also a social benefit to be gained from the promotion of same-sex partnerships.
In view of this finding, the court need not determine whether the DOH point regarding consistency with the Defense of Mar *537 riage Act and the laws of other states suffices as a rational basis.
b. Due Process
The plaintiffs contend that marriage is a fundamental right entitled to due process protection.
Although it is clear that the plaintiffs have a fundamental right to enter into opposite-sex marriages, they do not have an equivalent right to enter into same-sex marriages. The court finds that civil marriage of same-sex couples is not a fundamental right under either the New York Constitution (art I, § 6) or the United States Constitution (14th Amend).
The Due Process Clause prohibits states from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest. (Washington v Glucksberg, 521 US 702, 721 [1997].) In order to be deemed a fundamental right protected by due process, the right must be “deeply rooted in this Nation’s history and tradition” and “implicit in the concept of ordered liberty,” such that “neither liberty nor justice would exist if they were sacrificed” (id. at 720-721). The court finds that the alleged right of same-sex couples to marry is not “deeply rooted in this Nation’s history and tradition” and is therefore not a fundamental right.
The court does not construe the Supreme Court’s holding in Loving v Virginia (388 US 1 [1967]) as the establishment of a fundamental right to same-sex marriage. There the Court held that a Virginia law forbidding interracial marriages deprived the plaintiffs of their fundamental right to marry, yet its decision was clearly anchored to the concept of marriage as a union involving persons of the opposite sex and clearly based on the invidious racial discrimination behind the law. (Standhardt, 206 Ariz at 283, 77 P3d at 458.)
Since the classification at issue does not burden a fundamental right, it must be deemed constitutional if it bears a rational relationship to a legitimate governmental interest. As stated above, the classification does bear such relationship.
c. Free Expression
The plaintiffs contend that the statutory scheme denies them their right, as couples, to state their commitment to each other, citing article I, § 8 of the New York Constitution: “Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press.”
*538 The statutory scheme in no way prohibits, directly or incidentally, the plaintiff couples from expressing their commitment to each other, ceremonially or otherwise.
Conclusion
The decision to extend any or all of the benefits associated with marriage is a task for the Legislature, not the courts. Social perceptions of same-sex civil contracts may change over time, and every group has the right to persuade its fellow citizens that its view of such matters is the best. (Lawrence v Texas, 539 US 558, 603 [2003, Scalia, J., dissenting].) If that day comes, it is within the province of the Legislature to so act.
Based on the foregoing, the plaintiffs’ and municipal defendants’ motions for summary judgment are denied and the defendant New York State Department of Health’s cross motion for summary judgment dismissing the complaint is granted.
In accordance with section 3001 of the Civil Practice Law and Rules, the court declares the Domestic Relations Law, as applied to deny marriage licenses to same-sex couples, constitutional.
The court further declares that the defendant DOH was within its authority in issuing the advisory letter dated February 27, 2004.
The court further declares that the defendant City Clerk does not have authority to issue marriage licenses to same-sex couples.

 In Standhardt, the court noted that “the only sexual relationship capable of producing children is one between a man and a woman. The State could reasonably decide that by encouraging opposite-sex couples to marry, thereby assuming legal and financial obligations, the children born from such relationships will have better opportunities to be nurtured and raised by two parents within long-term, committed relationships, which society has traditionally viewed as advantageous for children. Because same-sex couples cannot by themselves procreate, the State could also reasonably decide that sanctioning same-sex marriages would do little to advance the State’s interest in ensuring responsible procreation within committed, long-term relationships.” (Standhardt, 206 Ariz at 287-288, 77 P3d at 462-463.)
In Morrison, the court held that “[t]he State of Indiana has a legitimate interest in encouraging opposite-sex couples to enter and remain in, as far as possible, the relatively stable institution of marriage for the sake of children who are frequently the natural result of sexual relations between a man and a woman . . . Extending the benefits of civil marriage to same-sex couples would not further the State’s interest in ‘responsible procreation’ by opposite-sex couples.” (Morrison, 821 NE2d at 30-31.)