[803 NYS2d 242]

In the Matter of ROBERT HEBEL, Respondent, v JASON WEST, Individually and as Mayor of the Village of New Paltz, Appellant. (Proceeding No. 1.)

In the Matter of ROBERT HEBEL, Respondent-Appellant, v VILLAGE OF NEW PALTZ et al., Appellants-Respondents, and REBECCA ROTZLER, as Deputy Mayor of the Village of New Paltz, et al., Respondents. (Proceeding No. 2.)

Third Department, October 27, 2005

**APPEARANCES OF COUNSEL**

*Heller, Ehrman, White & McAuliffe*, Los Angeles, California (*John C. Ulin* of counsel), admitted pro hac vice, for appellant and appellants-respondents.

*Liberty Counsel*, Longwood, Florida (*Rena M. Lindevaldsen* of counsel), for Robert Hebel, respondent and respondent-appellant.

**OPINION OF THE COURT**

LAHTINEN, J.

Respondents seek to interject into this case a challenge to the

constitutionality of that aspect of New York's Domestic Relations Law which limits marriage to one man and one woman. That constitutional issue, however, is not properly before us in this case. This case is about orderly government.

On February 27, 2004, respondent Jason West, Mayor of the Village of New Paltz, Ulster County, solemnized the marriages of 25 same-sex couples. Prior to the ceremony, marriage licenses for the couples had been requested from the Clerk of the Town of New Paltz, Ulster County (*see* Domestic Relations Law §§ 14, 15), who refused to issue the licenses. West then purportedly undertook an "independent view of the law" and decided that he was "constitutionally prohibited" from refusing to solemnize same-sex marriages. He thus drafted his own "affidavit of marriage" and "contract of marriage," and used these documents instead of duly issued licenses.

West issued a press release announcing that he intended to continue this practice. Petitioner—a resident and member of the Board of Trustees of respondent Village of New Paltz—commenced the first of these CPLR article 78 proceedings seeking to enjoin West from performing marriages for which no valid license had been issued. A temporary restraining order was granted on March 5, 2004. West's motion to dismiss upon the ground that petitioner lacked standing was denied in an order entered April 20, 2004. Oral argument on the merits of the petition was heard on May 17, 2004 and, on June 16, 2004, Supreme Court rendered its written decision making it clear that the legal issue before it was not the constitutionality of this state's marriage laws. The pertinent legal issue it faced was framed as, "whether the Mayor in clear violation of the Domestic Relations Law may legally marry a couple without a license duly issued by the Town Clerk. Or put another way, may the Mayor substitute his judgment for that of the State Legislature in deciding what should be required for two adults to enter into a binding marital relationship." The court observed that accepting West's argument "would mean the Mayor is a law unto himself" and, accordingly, it granted the petition, permanently enjoining West from solemnizing marriages without duly issued licenses.

During the time the temporary restraining order in the first proceeding was in effect, the Village of New Paltz Board of Trustees, by a divided vote, appointed respondent Rebecca Rotzler as a marriage officer (*see* Domestic Relations Law § 11-c). After the permanent injunction was issued as to West, the Board

of Trustees, again by a divided vote, added respondent Julia Walsh as a marriage officer. Rotzler and Walsh proceeded to solemnize same-sex marriages.

Petitioner commenced the second proceeding seeking, among other things, to permanently enjoin all village officers, employees and marriage officers from solemnizing marriages without licenses and declaring void all previously performed same-sex marriages. While Supreme Court declined to declare the marriages void since the same-sex couples had not been joined as parties, the court's December 2004 decision and judgment granted that part of the petition seeking to permanently enjoin Rotzler, Walsh and any other designated marriage officer from performing unlicensed marriages. These appeals by certain parties ensued.[1]

We turn first to the contention that petitioner lacked standing to bring these proceedings. While there is a "liberalized attitude toward recognition of standing" (*Matter of Morgenthau v Cooke*, 56 NY2d 24, 30 [1982]; *see Boryszewski v Brydges*, 37 NY2d 361 [1975]; Siegel, NY Prac § 136 [4th ed]), nevertheless we acknowledge that "the subject of standing has become a troublesome one for the courts" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 771 [1991]; *see New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 222 [2004] [R.S. Smith, J., dissenting] ["Standing is a complicated subject at best, and there is always the danger that it will become a black box, from which a judicial conjurer can extract the desired result at will"]). Generally, standing requires an injury in fact and is considered in light of the following "prudential limitations: a general prohibition on one litigant raising the legal rights of another; a ban on adjudication of generalized grievances more appropriately addressed by the representative branches; and the requirement that the interest or injury asserted fall within the zone of interests protected by the statute invoked" (*Society of Plastics Indus. v County of Suffolk*, *supra* at 773; *see Matter of Colella v Board of Assessors of County of Nassau*, 95 NY2d 401, 409-410 [2000]).

The Court of Appeals has held that "[t]here is ample authority that relief in the nature of *mandamus* may be granted to

1. West's appeal from the April 2004 order denying his motion to dismiss in proceeding No. 1 must be dismissed as no appeal as of right lies from a nonfinal order in a CPLR article 78 proceeding (*see* CPLR 5701 [b]; *Matter of County of Oswego v Travis*, 16 AD3d 733, 734 n [2005]). However, the appeal from the final judgment brings this order up for review (*see Matter of County of Oswego v Travis, supra*).

compel a public body or officer to refrain from taking particular administrative action in contravention of a clear mandate of law, even though the immediate relief sought is of a preventive rather than an affirmative nature" (*Matter of New York Post Corp. v Leibowitz*, 2 NY2d 677, 684 [1957]).[2] Further, we have previously stated that in matters of "great public interest," a " 'citizen may maintain a mandamus proceeding to compel a public officer to do his [or her] duty' " (*Police Conference of N.Y. v Municipal Police Training Council*, 62 AD2d 416, 417-418 [1978], quoting *Albert Elia Bldg. Co. v New York State Urban Dev. Corp.*, 54 AD2d 337, 341 [1976]; *see Matter of Schenectady County Sheriff's Benevolent Assn. v McEvoy*, 124 AD2d 911, 912 [1986]) and, moreover, that " '[a]n article 78 proceeding in the nature of mandamus is an appropriate remedy to compel performance of a statutory duty that is ministerial in nature but not one in respect to which an officer may exercise judgment or discretion' . . . unless such judgment or discretion has been abused by arbitrary or illegal action" (*Board of Educ. of N. Colonie Schools, Newtonville v Levitt*, 42 AD2d 372, 374 [1973] [Cooke, J.], quoting *Matter of Posner v Levitt*, 37 AD2d 331, 332 [1971]).

As to whether this is a matter of great public interest, we note that, in addition to the national publicity received by West, his actions, if allowed to continue, would have the potential result of permitting a part-time local official to effectively amend the marriage laws of this state with input from neither the Legislature nor the courts (*see generally Li v State*, 338 Or 376, 396, 110 P3d 91, 101-102 [2005]). This is *not* the case of a local official's actions "having no appreciable public significance beyond the immediately affected parties" (*Matter of Colella v Board of Assessors of County of Nassau, supra* at 411) but is, instead, a matter of obvious statewide concern. While this ground for standing must be narrowly applied, the current case is one of apparent unprecedented action by a local official and is, in such regard, sui generis.

West's conduct was also "in contravention of a clear mandate of law" (*Matter of New York Post Corp. v Leibowitz, supra* at 684). Under New York law, the issuing of a marriage license is

---

**2.** As to whether this proceeding was properly framed as one for mandamus relief, we note that the Court of Appeals stated immediately prior to the quoted language that "[w]hether or not an order in the nature of *prohibition* is an appropriate remedy on the facts of this case need not detain us" (*Matter of New York Post Corp. v Leibowitz, supra* at 684).

the duty of the town or city clerk (*see* Domestic Relations Law §§ 13, 14, 15). There is no provision for a mayor to draft his or her own version of a marriage license and then issue that document to people seeking to be married, as West did here. Moreover, a mayor (or any other person permitted to solemnize marriages) is authorized to perform a marriage only where a marriage license has been issued to the couple appearing before him or her (*see* Domestic Relations Law § 17). The controlling statutes afford a mayor no discretion in determining whether a marriage license should be issued or in solemnizing a marriage in which no valid license has been issued and, indeed, the law is unequivocal that knowingly solemnizing a marriage where no proper license has been issued is an unlawful act. In light of the unusual circumstances of these proceedings, we agree with Supreme Court that the controlling precedent permits the conclusion that petitioner had standing to bring the proceedings.

■ Respondents next argue that Supreme Court erred in enjoining West and other village officials from performing same-sex marriages. They premise this argument upon their contention that this state's marriage laws violate several provisions of the Constitution.[3] This case, however, is *not* about the constitutionality of this state's marriage laws. As explained by California's highest court when addressing a similar situation in *Lockyer v City & County of San Francisco* (33 Cal 4th 1055, 1066-1067, 95 P3d 459, 462 [2004]), the important but narrow issue implicated is "whether a local executive official who is charged with the ministerial duty of enforcing a state statute exceeds his or her authority when, without any court having determined that the statute is unconstitutional, the official deliberately declines to enforce the statute because he or she determines or is of the opinion that the statute is unconstitutional." Indeed, that court emphasized the point with several examples, including that "we would face the same legal issue if the statute in question were among those that restrict the possession or require the registration of assault weapons, and a local official, charged with the ministerial duty of enforcing those statutes, refused to apply their provisions because of the of-

---

3. While most arguments are premised upon the State Constitution, references to the US Constitution are occasionally interjected by the parties. For purposes of the narrow issues addressed in this appeal, the analysis would be the same under either constitution and, thus, most references herein to "constitution" apply to both unless the context indicates otherwise.

ficial's view that they violate the Second Amendment of the federal Constitution" (33 Cal 4th at 1067, 95 P3d at 462). While further examples could be set forth, we do not deem it necessary to belabor the point, other than stress that the merits of the underlying issue (whether same-sex marriages, the Second Amendment, or otherwise) is of no moment to the issue before us on this appeal.

Simply stated, in an effort to interject his beliefs about an area of constitutional law that is unsettled and has divided courts that have addressed similar cases,[4] West overlooked that his actions implicated a core constitutional tenet; that is, the separation of power (*see Under 21, Catholic Home Bur. for Dependent Children v City of New York*, 65 NY2d 344, 355-356 [1985]; *Lockyer v City & County of San Francisco, supra*, 33 Cal 4th at 1068, 95 P3d at 463; *see also* Federalist Papers No. 47 ["The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self appointed, or elective, may justly be pronounced the very definition of tyranny"]). Here, West robed himself with judicial powers and declared the marriage laws of this state unconstitutional. Having concluded that the Legislature violated the constitution, he then wrapped himself with that body's power and drafted his own set of documents for licensing marriages. In so doing, he clearly exceeded his role as a village mayor.[5]

---

**4.** (*Compare Lewis v Harris*, 378 NJ Super 168, 875 A2d 259 [2005], *Seymour v Holcomb*, 7 Misc 3d 530 [2005], *Morrison v Sadler*, 821 NE2d 15 [Ind 2005], *Standhardt v Superior Ct. ex rel. Maricopa*, 206 Ariz 276, 77 P3d 451 [2003], *Dean v District of Columbia*, 653 A2d 307 [DC 1995], *Matter of Cooper*, 187 AD2d 128 [1993], *appeal dismissed* 82 NY2d 801 [1993], *Singer v Hara*, 11 Wash App 247, 522 P2d 1187 [1974], *review denied* 84 Wash 2d 1008 [1974], *and Baker v Nelson*, 291 Minn 310, 191 NW2d 185 [1971], *appeal dismissed* 409 US 810 [1972], *with Hernandez v Robles*, 7 Misc 3d 459 [2005], *Goodridge v Department of Pub. Health*, 440 Mass 309, 798 NE2d 941 [2003], *and Baker v State*, 170 Vt 194, 744 A2d 864 [1999].) While some of these cases were decided after West's actions, the majority—including one from the Appellate Division, Second Department—predated his actions.

**5.** We reiterate that we take no position in this case as to whether West's views on redefining marriage may ultimately find favor with the Legislature or in a properly brought court case. Nor is the constitutional issue one for which there is no viable means of obtaining expeditious judicial review. The issue has already been properly presented in several lower courts in this state (*see Seymour v Holcomb, supra*; *Hernandez v Robles, supra*; *Matter of Kane v Marsolais*, Sup Ct, Albany County, Jan. 31, 2005, Kavanagh, J.; *Samuels v New York State Dept. of Health*, Sup Ct, Albany County, Dec. 7, 2004, Teresi, J.), and appeals from those decisions are currently pending.

Respondents further argue that West's actions fell within his oath of office to uphold the constitution (*see* NY Const, art XIII, § 1). When presented with this issue in an analogous case, Oregon's Supreme Court explained that the duty of local officials to be mindful of the constitution when executing their official duties does not "somehow grant[ ] to a governmental official powers not otherwise devolved by law on that official to take actions and fashion remedies that, under any other circumstances, would constitute *ultra vires* acts" (*Li v State*, 338 Or 376, 396, 110 P3d 91,101 [2005], *supra*;[6] *see Lockyer v City & County of San Francisco, supra,* 33 Cal 4th at 1109, 95 P3d at 492 ["(A)n executive official generally does not have the authority to refuse to comply with a ministerial duty imposed by statute on the basis of the official's opinion that the statute is unconstitutional"]). While narrow exceptions permit a local government official to challenge the constitutionality of a state statute (*see City of New York v State of New York*, 86 NY2d 286, 291-292 [1995]), we need not engage in a discussion of the subtleties of these exceptions in this case. Those exceptions afford such an official the capacity to commence a legal action to resolve the perceived constitutional issue. Having arrived at his own constitutional conclusion, West deemed it unnecessary to seek judicial intervention before disregarding the Domestic Relations Law. The argument that his acts fell within the scope of his constitutional oath under the circumstances of this case (where, among other things, the constitutional issue is not clearly settled) is without merit.

Petitioner cross-appealed in proceeding No. 2 asserting that the same-sex marriages that were performed should be declared void. We do not deem it appropriate to address the merits of this issue since the same-sex couples were not parties and they sought, but were denied, permission to intervene. Nonetheless, we note that the issue of whether this state must, under the constitution, offer marriage to same-sex couples is currently pending in appeals from cases *properly* presenting that issue to

---

**6.** The Oregon court aptly added that "[i]n reaching a contrary conclusion in the appeals before us here, the county erroneously transmogrified a governmental official's ongoing obligation to support the constitution into an implied grant of authority, respecting any laws that the official must administer, to prescribe remedies for any perceived constitutional shortcomings in such laws *without regard to the scope of the official's statutory authority to act*" (338 Or at 396, 110 P3d at 101).

this Court, and the decision in those cases will control whether the marriages of these couples may become legally cognizable.

CARDONA, P.J., MERCURE, CARPINELLO and MUGGLIN, JJ., concur.

Ordered that the appeal from the order entered April 20, 2004 is dismissed, without costs.

Ordered that the judgments are affirmed, without costs.