OPINION OF THE COURT
Vincent Pizzuto, J.
May a survivor of a homosexual relationship, alleged to be a “spousal relationship”, claim spousal rights against decedent’s *283 will, pursuant to or similar to those granted to a "surviving spouse” by EPTL 5-1.1?
The answer is: "No.”
Mr. Ernest Chin seeks a judgment declaring him to have the rights of a surviving spouse in the event that a hearing in this matter would establish that he and the decedent, Mr. Cooper, maintained a "spousal relationship.”
Mr. Chin alleges that from approximately the middle of 1984 until the decedent’s death, on February 19, 1988, he and the decedent lived together in a spousal-type relationship in New York State and "except for the fact that we were of the same sex, our lives were identical to that of husband and wife. We kept a common home; we shared expenses; our friends recognized us as spouses; we had a physical relationship.”
Mr. Chin further alleges that "the only reason Mr. Cooper and I were not legally married is because marriage license clerks in New York State will not issue licenses to persons of the same sex.” Additionally, since 1933, persons could not enter into common-law marriages in New York State.
He argues that the denial of a right to a marriage license, resulting in his inability to marry Mr. Cooper in New York State, involves State action (the City Clerk being an instrumentality of the State). Therefore, under the doctrine of Under 21, Catholic Home Bur. for Dependent Children v City of New York (65 NY2d 344), this court would be compounding his deprivation of equal protection of law guaranteed by section 1 of the 14th Amendment of the US Constitution were it to rule that because he could not obtain a marriage license, he could not be recognized as a spouse for the purpose of claiming spousal rights.
This court holds that persons of the same sex have no constitutional rights to enter into a marriage with each other. Neither due process nor equal protection of law provisions are violated by prohibiting such marriages. Nor does Mr. Chin have any right or standing to elect against decedent’s will.
In Baker v Nelson (291 Minn 310, 191 NW2d 185), the petitioners, both adult males, applied to a clerk of the County District Court for a marriage license. The clerk declined to issue the license on the sole ground that petitioners were of the same sex, it being undisputed that there were otherwise no statutory impediments to a heterosexual marriage by either petitioner. On a writ of mandamus, the trial court ruled that the clerk was not required to issue a marriage *284 license and specifically directed that a marriage license not be issued. On appeal, the appellate court construed the applicable Minnesota statute as not authorizing marriages between persons of the same sex, although the statute did not expressly prohibit it.
In Baker (supra), the petitioners contended (as does Mr. Chin herein) that the prohibition of same-sex marriages denied them a fundamental right guaranteed by the Ninth Amendment of the US Constitution and made applicable to the States by the Fourteenth Amendment, thereby depriving them of liberty and property without due process, and denying them the equal protection of laws, both guaranteed by the Fourteenth Amendment. They asserted that the right to marry without regard to the sex of the parties is a fundamental right of all persons and that to restrict marriage to couples of the opposite sex is irrational and invidiously discriminatory.
The court, in referring to marriage as a state of a union of man and woman dating back to the Book of Genesis, stated (291 Minn, at 312-313, 191 NW2d, at 186, supra): "This historic institution manifestly is more deeply founded than the asserted contemporary concept of marriage and societal interests for which petitioners contend. The due process clause of the Fourteenth Amendment is not a charter for restructuring it by judicial legislation.” It concluded that the Minnesota statute, as construed, prohibiting marriage between persons of the same sex was not irrational nor invidious and did not offend the First, Eighth, Ninth and Fourteenth Amendments of the US Constitution. The appeal from the Minnesota Supreme Court to the United States Supreme Court was dismissed for want of a substantial Federal question. (Baker v Nelson, 409 US 810.) Such a dismissal is a holding that the constitutional challenge was considered and rejected. (Hicks v Miranda, 422 US 332.)
Traditionally and currently, the terms "marriage” and "spouse” necessarily and exclusively involve a contract between persons of different sexes. (For comprehensive definitions of marriage, see, 55 CJS, Marriage, § 1, at 806.) "In traditional equal protection terminology, it seems beyond dispute that the state has a compelling interest in fostering procreation of the race and providing status and stability to the environment in which children are raised.” (Emphasis supplied.) (See, Adams v Howerton, 486 F Supp 1119, 1124, for *285 an excellent discussion of the issue involved and cases cited therein.)
The Adams case (supra, at 1121) involved a construction of the Immigration and Naturalization Code that provided for the status of " 'immediate relative’ ” which was defined as " 'the children, spouses, and parents of a citizen of the United States.’ ” Plaintiff Richard Adams was a United States citizen, and plaintiff Anthony Sullivan was an Australian citizen. The plaintiffs, after obtaining a license to marry from the County Clerk in Boulder, Colorado, went through a purported ceremony of marriage in Colorado and claimed to be married to each other and, therefore, a spouse of each other. The plaintiff sought an "immediate relative” status for Mr. Sullivan. The court adopted an informal opinion of the Colorado Attorney General that the purported marriages between persons of the same sex were of no legal effect in Colorado, and additionally held that to recognize such marriages would violate Federal public policy.
There is a dearth of New York reported cases declaring marriages between persons of the same sex to be illegal. They do not address any constitutional issues. (See, Anonymous v Anonymous, 67 Misc 2d 982 [where a marriage ceremony between a male and one who was not a female at the time of marriage was held to be an invalid marriage]; Frances B. v Mark B., 78 Misc 2d 112 [where a marriage ceremony between a female and a female at the time of marriage was held to be invalid].) In Robin v Cook (NYLJ, Oct. 30, 1990, at 22, col 1), the Supreme Court held that a cause of action predicated on a "spousal-type” relationship between two homosexuals, alleging that the defendant had abandoned the plaintiff and seeking such relief as maintenance and a declaration of inheritance rights, was beyond the court’s authority to grant.
This court could find no authority in any jurisdiction of the United States, either authorizing marriages between people of the same sex, or elevating homosexual unions to the same level achieved by the marriage of two people of the opposite sex.
However, recent trends have surfaced, both statutorily and decisionally, prohibiting discrimination against homosexuals in employment, housing and many areas. For example, citizenship may not be denied to homosexuals on that basis.
Braschi v Stahl Assocs. Co. (74 NY2d 201, 209) involved New York City Rent and Eviction Regulations (9 NYCRR *286 2204.6 [d]), which provided that upon the death of a rent-controlled tenant, the landlord may not dispossess "either the 'surviving spouse of the decedent tenant or some other member of the deceased tenant’s family who has been living with the tenant’ (emphasis supplied).” The issue before that court was to determine the meaning of the term "family” in the context of the statute. Mr. Braschi was living with Mr. Blanchard in the rent-controlled apartment in question from the summer of 1975 until Mr. Blanchard’s death in September of 1986. Only Mr. Blanchard was the tenant of record. The landlord sought to dispossess Mr. Braschi. The Court of Appeals concluded (supra, at 211): "[T]he term family, as used * * * should not be rigidly restricted to those people who have formalized their relationship by obtaining, for instance, a marriage certificate or an adoption order. The intended protection against sudden eviction should not rest on fictitious legal distinctions or genetic history, but instead should find its foundation in the reality of family life. In the context of eviction, a more realistic, and certainly equally valid, view of a family includes two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and intradependence. This view comports both with our society’s traditional concept of 'family’ and with the exceptions of individuals who live in nuclear units”. After referring to Webster’s Dictionary’s definition of " 'family’ ” as " 'a group of people united by certain convictions or common affiliation’ ” and Ballantine’s Law Dictionary’s definition of " 'family’ ” as " '[primarily the collective body of persons who live in one house and under one head or management’ ”, the court went on to state: "Hence, it is reasonable to conclude that, in using the term 'family’ the Legislature intended to extend protection to those who reside in households having all of the normal familial characteristics.” (Supra, at 211.)
However, in People v Allen (27 NY2d 108, 110-111), the Court of Appeals construed Family Court Act § 812, which vested in the Family Court " 'exclusive original jurisdiction over any proceeding concerning acts which would constitute disorderly conduct or assault between * * * members of the same family or household.’ ” It held that " 'family’ ” and " 'household’ ” categories of section 812 conferred jurisdiction to Family Court over disputes "arising in relationships [there heterosexual] only where there is legal interdependence, either through a solemnized marriage or a recognized marriage or a recognized common-law union” (supra, at 112), despite the *287 allegations of long-standing spousal relationships. The court stated (supra, at 113): "It matters not that, in reality, many such informal relationships exist in our State. Regardless of the frequency of its occurrence, such informal or illicit relationships remain unrecognized and should not be afforded the protective jurisdiction of the Family Court.” As in Braschi (supra), this decision was based on necessity and public policy, the court observing that to hold otherwise would impose a tremendous burden on the Family Court.
Mr. Chin urges upon this court that the tests enunciated in Braschi (supra) determining whether or not Mr. Braschi had a family relationship with the decedent should be applied by this court in determining whether or not he had a spousal relationship. This issue need not be reached, since the court holds that the survivor of a same-sex, spousal-type relationship cannot assert EPTL spousal rights. There is a great distinction between being part of a family entitled to the protection of rent control laws because of public policy and legislative intent, and in being a surviving spouse of a decedent.
Although EPTL 5-1.1 grants a right of election to a surviving spouse, without definition, EPTL 5-1.2 (a) defines a surviving spouse as being a husband or a wife and provides for the disqualification of a surviving spouse to elect to take his or her elective share under circumstances enumerated in subdivisions (1) through (6). Thus, since the enactment of Decedent Estate Law § 18 by the Laws of 1929 (ch 229, § 4 [the predecessor to EPTL art 5]), the Legislature has evinced an intent and public policy to protect a surviving spouse (a husband or a wife) from being disinherited.
Mr. Chin would have this court hold that persons of the same sex who opt to live in a "spousal relationship” should be given similar rights to those granted to a surviving spouse by the Legislature. To do so would be impermissible judicial legislating and contrary to the public policy expressed by our Legislature.
As noted, the State has a compelling interest in fostering the traditional institution of marriage (whether based on self-preservation, procreation, or in nurturing and keeping alive the concept of marriage and family as a basic fabric of our society), as old and as fundamental as our entire civilization, which institution is deeply rooted and long established in firm and rich societal values.
*288 The Legislature has chosen to restrict the right to marry to people of the opposite sex, a classification which has a rational basis and which does not offend the equal protection right of the Fourteenth Amendment or due process. (Baker v Nelson, 291 Minn 310, 191 NW2d 185, supra.)
In summary, the court concludes that marriage between homosexuals cannot be legalized under the laws of the State of New York and that such purported marriages do not give rise to any rights either pursuant to or similar to those granted by EPTL 5-1.1. No constitutional rights have been abrogated or violated in so holding.
The action entitled "Ernest Chin v Regina Kelly and Bessie Gable as Executrices of the Last Wills of William Thomas Cooper, deceased, and Clint Roger Gable, deceased”, that was instituted under index No. 48275/88 in the Civil Court of the City of New York of Kings County and later transferred to this court is hereby remanded to the Landlord-Tenant Part of the Civil Court of the City of New York of Kings County for determination.
The questions of compensation for the present and past attorney for the executrix shall be held in abeyance for determination by the court in an accounting proceeding.