In the Matter of the Estate of WILLIAM T. COOPER, Deceased. ERNEST CHIN, Appellant; REGINA V. KELLY, as Executrix of WILLIAM T. COOPER, Deceased, Respondent.

Second Department, February 1, 1993

APPEARANCES OF COUNSEL

*Bradley B. Davis,* New York City, for appellant.

*Ethel Fitzgerald,* Brooklyn, for respondent.

*Robert Abrams, Attorney-General,* New York City *(Lawrence S. Kahn* of counsel), in his statutory capacity under Executive Law § 71. (No brief filed.)

*Judith E. Schaeffer,* Washington, D.C., and *Evan Wolfson,* New York City, for Lambda Legal Defense and Education Fund, Inc., *amicus curiae.*

## OPINION OF THE COURT

MANGANO, P. J.

The question to be resolved on this appeal is whether the survivor of a homosexual relationship, alleged to be a "spousal relationship", is entitled to a right of election against the decedent's will, pursuant to EPTL 5-1.1. In our view, the question must be answered in the negative.

I

William Thomas Cooper died on February 19, 1988. The decedent died testate, leaving everything to the petitioner as a specific and residuary legatee, with the exception of certain real estate, allegedly constituting over 80% of the value of the estate, which was left to a former homosexual lover of the decedent.

In support of this proceeding to determine that he is entitled to exercise a right of election against the decedent's will, the petitioner alleged, *inter alia,* as follows:

"I met William Cooper in 1984. From approximately the middle of 1984 until his sudden death from a congenital heart condition in February 1988, I lived with him in Apartment 1, 183 Wyckoff Street, Brooklyn, New York in a spousal-type situation. Except for the fact that we were of the same sex, our lives were identical to that of a husband and wife. We

kept a common home; we shared expenses; our friends recognized us as spouses; we had a physical relationship. Of course, we could not obtain a marriage license because no marriage license clerk in New York will issue such a document to two people of the same sex * * *

"The only reason Mr. Cooper and I were not legally married is because marriage license clerks in New York State will not issue licenses to persons of the same sex * * *

"However unconstitutional the denial of the right to a marriage license to Mr. Cooper and myself may have been, the Court cannot undo that now that Mr. Cooper is deceased. Since the Court, however, also is an instrument of the State * * * it cannot compound this unconstitutionality by saying that because we could not obtain a State-issued marriage license, I cannot be recognized as a spouse by State Court for the purpose of claiming spousal rights * * *

"I ask this Court simply to declare that *if* I can establish that Mr. Cooper and I, at the time of his death, were living in a spousal-type relationship, I am entitled to spousal rights, and the State-imposed unconstitutional impediment of making it impossible for two people of the same sex to obtain a marriage license does not alter this".

Upon submission of opposing papers and an application to dismiss the petition by the executrix of Cooper's estate, Acting Surrogate Pizzuto held that a survivor of a homosexual relationship, alleged to be a "spousal relationship", was not entitled to a right of election against the decedent's will pursuant to EPTL 5-1.1, stating, *inter alia:* "This court holds that persons of the same sex have no constitutional rights to enter into a marriage with each other. Neither due process nor equal protection of law provisions are violated by prohibiting such marriages. Nor does Mr. Chin have any right or standing to elect against decedent's will". *(Matter of Cooper,* 149 Misc 2d 282, 283.)

## II

The right of election by a "surviving spouse", insofar as is relevant to the facts at bar, is contained in EPTL 5-1.1 (c) (1) (B), as follows:

"(c) Election by surviving spouse against wills executed and testamentary provisions made after August thirty-first, nineteen hundred sixty-six * * *

"(1) Where, after August thirty-first, nineteen hundred

sixty-six, a testator executes a will disposing of his entire estate, and is survived by a spouse, a personal right of election is given to the surviving spouse to take a share of the decedent's estate, subject to the following * * *

"(B) The elective share * * * is one-third of the net estate if the decedent is survived by one or more issue and, in all other cases, one-half of such net estate."

We reject the petitioner's argument that he must be considered a "surviving spouse" within the meaning of the statute. "Generally, in the construction of statutes, the intention of the Legislature is first to be sought from a literal reading of the act itself or of all the statutes relating to the same general subject-matter" (McKinney's Cons Laws of NY, Book 1, Statutes § 92, at 182). The Legislature has expressly defined a "surviving spouse" in EPTL 5-1.2, as follows:

"§ 5-1.2 Disqualifications as surviving spouse

"(a) A *husband* or *wife* is a surviving spouse within the meaning, and for the purposes of * * * 5-1.1". (Emphasis added.)

Indeed, even in the absence of any express definition of the term "surviving spouse", an interpretation of the statute to the same effect would be warranted. It is well settled that "[t]he language of a statute is generally construed according to its natural and most obvious sense * * * in accordance with its ordinary and accepted meaning, unless the Legislature by definition or from the rest of the context of the statute provides a special meaning" (McKinney's Cons Laws of NY, Book 1, Statutes § 94, at 191-194). An illustration of this latter approach may be ascertained from the reasoning of the Supreme Court of Minnesota in *Baker v Nelson* (291 Minn 310, 191 NW2d 185). In that case, the court rejected an argument that the absence of an express statutory prohibition against same-sex marriages evinced a legislative intent to authorize such marriages. The Supreme Court of Minnesota held in this regard *(Baker v Nelson,* 291 Minn, *supra,* at 311, 191 NW2d, *supra,* at 185-186): "[The statute] which governs 'marriage,' employs that term as one of common usage, meaning the state of union between persons of the opposite sex. It is unrealistic to think that the original draftsmen of our marriage statutes, which date from territorial days, would have used the term in any different sense" *(see also, Anonymous v Anonymous,* 67 Misc 2d 982; *Morris v Morris,* 31 Misc 2d 548, 549).

We reject, as meritless, the contention of both the petitioner

and the *amicus curiae* that, based on the Court of Appeals decision in *Braschi v Stahl Assocs. Co.* (74 NY2d 201), the traditional definition of the term "surviving spouse" must be rejected, and replaced with a broader definition which would include the petitioner. In *Braschi v Stahl Assocs. Co. (supra)*, the Court of Appeals held that same-sex partners were "family members" for purposes of the rent control regulations at issue therein, prohibiting the eviction of "family members" upon the death of the tenant of record. Specifically, the Court of Appeals stated *(Braschi v Stahl Assocs. Co., supra,* at 211): "The intended protection against sudden eviction should not rest on fictitious legal distinctions or genetic history, but instead should find its foundation in the reality of family life. In the context of eviction, a more realistic, and certainly equally valid, view of a family includes two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence. This view comports both with our society's traditional concept of 'family' and with the expectations of individuals who live in such nuclear units".

However, in *Matter of Alison D. v Virginia M.* (155 AD2d 11, *affd* 77 NY2d 651), this Court held, in an opinion and order subsequently affirmed by the Court of Appeals, that a lesbian partner was not a "parent" under Domestic Relations Law § 70 (a) and rejected, as "totally misplaced" *(Matter of Alison D. v Virginia M., supra,* at 15) the argument that the holding in *Braschi v Stahl Assocs. Co. (supra)*, compelled a different result.

Accordingly, the term "surviving spouse", as used in EPTL 5-1.1, cannot be interpreted to include homosexual life partners.

## III

The petitioner and the *amicus curiae* argue that such a narrow definition of the term "surviving spouse" is unconstitutional as it violates the Equal Protection Clause of the State Constitution. Specifically, they argue that this unconstitutional definition directly derives from, and compounds, the State's unconstitutional conduct in interpreting the relevant provisions of the Domestic Relations Law as prohibiting members of the same sex from obtaining marriage licenses *(see, e.g., Frances B. v Mark B.,* 78 Misc 2d 112; *Anonymous v Anonymous,* 67 Misc 2d 982, *supra)*.

It is to this argument that we now turn.

It is well settled that there are three standards that may be applied in reviewing equal protection challenges: strict scrutiny, heightened scrutiny, and rational basis review *(Cleburne v Cleburne Living Ctr.,* 473 US 432, 440-441).

■ We note that Acting Surrogate Pizzuto correctly held that any equal protection analysis in the instant factual scenario is to be measured by the rational basis standard, i.e., the legislation (or government action) "is presumed to be valid and will be sustained if the classification drawn * * * is rationally related to a legitimate state interest" *(Cleburne v Cleburne Living Ctr., supra,* at 440), and not by the more stringent standards of heightened scrutiny or strict scrutiny.

In *Baker v Nelson* (291 Minn 310, 191 NW2d 185, *supra),* the petitioners, both adult males, made application to the clerk of the County District Court for a marriage license pursuant to the relevant Minnesota statute. The clerk declined to issue the license on the sole ground that the petitioners were of the same sex, "it being undisputed that there were otherwise no statutory impediments to a heterosexual marriage by either petitioner" *(Baker v Nelson,* 291 Minn, *supra,* at 311, 191 NW2d, *supra,* at 185).

The Supreme Court of Minnesota rejected the petitioners' argument that a prohibition on same-sex marriages denied them equal protection of the laws, holding *(Baker v Nelson,* 291 Minn, *supra,* at 312-314, 191 NW2d, *supra,* at 186-187):

"These constitutional challenges have in common the assertion that the right to marry without regard to the sex of the parties is a fundamental right of all persons and that restricting marriage to only couples of the opposite sex is irrational and invidiously discriminatory. We are not independently persuaded by these contentions and do not find support for them in any decisions of the United States Supreme Court.

"The institution of marriage as a union of man and woman, uniquely involving the procreation and, rearing of children within a family, is as old as the book of Genesis. *Skinner v Oklahoma ex rel. Williamson,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.ed. 1655, 1660 (1942), which invalidated Oklahoma's Habitual Criminal Sterilization Act on equal protection grounds, stated in part: 'Marriage and procreation are fundamental to the very existence and survival of the race.' This historic institution manifestly is more deeply founded than the asserted contemporary concept of marriage and societal

interests for which petitioners contend. The due process clause of the Fourteenth Amendment is not a charter for restructuring it by judicial legislation * * *

"The equal protection clause of the Fourteenth Amendment, like the due process clause, is not offended by the state's classification of persons authorized to marry. There is no irrational or invidious discrimination. Petitioners note that the state does not impose upon heterosexual married couples a condition that they have a proved capacity or declared willingness to procreate, posing a rhetorical demand that this court must read such condition into the statute if same-sex marriages are to be prohibited. Even assuming that such a condition would be neither unrealistic nor offensive under the Griswold rationale, the classification is no more than theoretically imperfect. We are reminded, however, that 'abstract symmetry' is not demanded by the Fourteenth Amendment".

The appeal from the Minnesota Supreme Court to the United States Supreme Court was dismissed for want of a substantial Federal question *(Baker v Nelson,* 409 US 810), and, as Acting Surrogate Pizzuto accurately noted *(Matter of Cooper,* 149 Misc 2d 282, 284, *supra):* "Such a dismissal is a holding that the constitutional challenge was considered and rejected. *(Hicks v Miranda,* 422 US 332.)"

The rational basis standard has been also applied in other similar instances where equal protection challenges have been raised to classifications based on sexual orientation *(see, High Tech Gays v Defense Indus. Sec. Clearance Off.,* 895 F2d 563, in which the Court, relying on the Supreme Court's ruling in *Bowers v Hardwick* [478 US 186] that homosexual activity is not a fundamental right, applied the rational basis standard, and rejected an equal protection challenge to a Defense Department policy of conducting expanded investigations into backgrounds of all gay and lesbian applicants for secret and top secret security clearance; *see also, Adams v Howerton,* 673 F2d 1036, *cert denied* 458 US 1111, in which the Court held that a citizen's "spouse" within the meaning of section 201 [b] of the Immigration and Nationality Act of 1952 [as amended], 8 USC § 1151 [b], must be an individual of the opposite sex and that, in accordance with the rational basis standard, such a bar against an alleged homosexual "spouse" was not unconstitutional).

Based on these authorities, we agree with Acting Surrogate Pizzuto's conclusion that "purported [homosexual] marriages

do not give rise to any rights * * * pursuant to * * * EPTL 5-1.1 [and that] [n]o constitutional rights have been abrogated or violated in so holding" *(Matter of Cooper, supra,* at 288).

Accordingly, the order and decree is affirmed insofar as appealed from.

BRACKEN, SULLIVAN and BALLETTA, JJ., concur.

Ordered that the order and decree is affirmed insofar as appealed from, with costs payable by the appellant personally.