Cytron v Malinowitz (2003 NY Slip Op 51555(U))

[*1]

Cytron v Malinowitz

2003 NY Slip Op 51555(U)

Decided on December 22, 2003

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 22, 2003

Supreme Court, Kings County
 SARA CYTRON, Plaintiff,
against
HARRIET MALINOWITZ and 103 BERKELEY PLACE HOUSING CORPORATION, Defendants.
INDEX NO. 25093/02

HERBERT KRAMER, J.
The following papers have been read on this motion:
Notice of Motion/Order to Show Cause/Papers Numbered
 Petition/Cross Motion and
 Affidavits (Affirmations) Annexed____________________________
Opposing Affidavits (Affirmations) _______ ______________________
Reply Affidavits (Affirmations)______________________________
_______________(Affirmation)______________________________
Other Papers______________________________
This is an action in partition. The underlying property has been sold and the question is one of dividing the proceeds between plaintiff and defendant who were former domestic partners. Plaintiff moves for summary judgment dismissing defendant's second, third and fourth counterclaims and partially dismissing defendant's first counterclaim.
Summary judgment should only be granted when no triable issues of fact are presented. Sillman v. Twentieth Century Fox Film Corp., 3 N.Y.2d 395,404 (1957). In order to prevail on a motion for summary judgment the movant must present a prima facie case demonstrating entitlement to judgment as a matter of law. Prince v. DiBenedetto, 189 A.D.2d 757, 759 (2d. Dept. 1993); Zarr v. Riccio, 180 A.D.2d 734, 735 (2d Dept. 1992). If and only if a prima facie case has been established will the respondent have to produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact. Zuckerman v. City of New York, [*2]49 N.Y.2d 557(1980). The evidence presented on summary judgment must be scrutinized in the light most favorable to the party opposing the motion, Goldstein v. Monroe County, 77 A.D.2d 232, 236( 4th Dept. 1980).
Here, plaintiff alleges that each of the indicated counterclaims must be dismissed since they present questions of law that must be resolved in her favor. This Court disagrees. The second and third counterclaims seek the fruits of alleged promises and understandings between the parties that are hotly disputed and cannot be determined as a matter of law.[FN1] Similarly, the fourth counterclaim seeks compensation for "defendant's contribution to the comedy team and law school competitions," which work plaintiff claims was either done gratuitously or was previously compensated. Finally, the first counterclaim seeks partition of the Berkeley Place apartment, jointly owned by the parties, the sale of which has already been accomplished and the proceeds now deposited. The issue with respect to this counterclaim involves the division of the proceeds. The defendant has counterclaimed for a share in the proceeds that would be in proportion to her original investment. Plaintiff asserts that the proceeds must be divided equally. [FN2]
[*3]
While factual issues prevent this court from granting summary judgment as a matter of law with respect to the factual claims made by the defendant, this court would agree with the plaintiff that the legal framework for defendants' claims cannot lie, as defendant would characterize it, in the "loving and committed domestic relationship they enjoyed for over thirteen years" since New York State does not recognize a relationship between partners of the same sex to be a marriage, Matter of Cooper, 187 A.D.2d 128 (2d Dept. 1993), Minieri v. Knittel, 188 Misc.2d 298 (Sup Ct. N.Y. County 2001). However, this having been said, there is property that remains to be divided and plaintiff does not deny the existence of a claim by the defendant to some percentage of the proceeds of the Berkeley property. The question which can be determined as a matter of law is upon what legal theory can this percentage may be determined.
The answer lies in the laws of partnership and joint venture. "A partnership is an association of two or more persons to place their money, efforts, labor or skill, or some or all of these in lawful commerce or business and to divide the profits and bear the loss in certain proportions . . . . A joint venture . . . has been defined as a special combination of two or more persons where in some specific venture a profit is jointly sought without any actual partnership or corporate designation . . . The incidents of a joint adventure and the obligations of the members toward each other are in many respects so similar to those existing in a partnership that joint adventurers' rights, duties and liabilities are to be tested by rules closely analogous to and generally substantially the same as those which govern partnerships. It has been said that a joint venture is a limited partnership not limited in a statutory sense as to as to liability, but as to scope and duration and thus one distinction between the two forms of association is that a joint venture relates to a single transaction [albeit of long duration], while a partnership relates to a general business of a particular kind." Hanlon v. Melfi, 102 Misc.2d 170 (N.Y.Sup.,1979).
 "'The ultimate inquiry is whether the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and the commingled property and interest of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their joint benefit' . . . " Matter of Steinbeck v. Gerosa, 4 N.Y.2d 302, 317(1958).
"The fact that there is no written agreement of partnership is not conclusive in determining where the thrust of the controversy is. Where no partnership agreement is executed in writing by the parties, it must be determined from the testimony, from the conduct of the parties, and especially from the documentary evidence whether or not a partnership existed. The burden, of course of establishing the existence of an oral partnership by a fair preponderance of the credible evidence rests upon the party claiming the partnership." Hanlon v. Melfi, supra, 102 Misc.2d at 173, accord, Williams v. Lynch, 245 A.D.2d 715,717 (3d Dept. 1997) ("An oral partnership agreement is not entirely unenforceable [even where] it [may] incorporate[] promises that cannot be fully performed within a year or a lifetime . . . rather, 'the only effect of the [*4][Statute of Frauds], where [such an] agreement has been wholly or partially executed, is to convert it into a partnership at will, wherein a partner may bring an action at equity to call his co-partner to account.").
Partnership Law §40 provides guidelines with respect to the determination of the rights and duties of the partners and presumes an equal equity interest in the partnership assets subject to any agreement between them. The party seeking to establish such agreement spelling out a different division of the assets shall bear the burden of proof as to the financial intent of the parties.
The motion for summary judgment is granted to the extent indicated in this decision. This constitutes the decision and order of the Court.
J.S.C.
Decision Date: December 22, 2003
Footnotes

Footnote 1: The question of federal preemption with respect to the alleged invasion of the plaintiff's pension is a red herring since defendant does not seek to invade the pension, but merely use the amount that accrued during the period to the partnership as a credit in this action. The Second Counterclaim for "Unjust Enrichment and Constructive Trust" recites in pertinent part: "The parties' domestic partnership was at all times hereinafter mentioned a confidential relationship. From the inception of their domestic partnership relationship , , , until their separation . . . plaintiff always represented and promised that the parties' assets, whether in joint name or in the name of one of the parties only, would be jointly owned. . . Defendant, relied upon these representations and promises by plaintiff, and in particular that the Thrift Plan would be the parties' retirement fund and as a result of defendant's said reliance, defendant contributed only a minimal amount of her salary to her own employment retirement plan and instead invested all of her capital in the parties' joint investment including the [property in question]."
The Third Counterclaim for "Fraud in the Inducement" recites in pertinent part:"From the inception of their domestic partnership . . . until their separation . . . plaintiff always represented and promised that the parties' assets whether in joint name or in the name of one of the parties only would be jointly owned . . . Based on this promise, defendant and plaintiff agreed that defendant would only contribute a minimal amount of her salary to her own employment retirement plan and that, instead, defendant would invest all of her capital, which was in defendant's name alone, into the parties' joint investments, including [the apartment in question]

Footnote 2: Defendant claims entitlement to reimbursement on a pro rata basis for her initial investments of time and money of $164,458 as against defendant's contribution of $38,000 from her separate funds. Plaintiff asserts that "defendant can either equally divide the equity in the apartment and split the difference in our two pensions equally Under this scenario of the $340,000 Apartment proceeds being held in escrow, we would each get $170,000 and defendant would get a credit of $50,000 for the difference between her pension of $90,000 and my pension of $190,000 or we can divide our properties in accordance with title and legal principles Under this scenario, we would each get back our initial down payments from the $340,000(defendant would get $150,000 and I would get approximately $40,000.) I would receive a credit and use it for my greater contributions to the mortgage amortization, and we would then split the remaining proceeds equally, and defendant would keep her pension and I would keep mine."