OPINION OF THE COURT
Alfred J. Weiner, J.
The 20 petitioners in this CPLR article 78 proceeding were denied marriage licenses by respondent Orangetown Town Clerk in early March 2004 on the ground that they sought to marry individuals of the same sex. Petitioners seek an order directing respondent Town Clerk to issue marriage licenses to them and directing respondent New York State Department of Health (hereinafter DOH) to accept those licenses as valid pursuant to Domestic Relations Law article 3. Petitioners contend that they are entitled to marriage licenses under the existing statutory scheme, which does not expressly prohibit same-sex marriages. Petitioners further contend that if the Domestic Relations Law is applied to deny same-sex couples the right to marry, the law violates their equal protection and due process rights as guaranteed by the New York State Constitution. For the reasons that follow, the relief sought by petitioners is denied.
Facts and Procedural History
On March 4, 5, 8 or 10, 2004, petitioners, members of same-sex lesbian and gay couples, went to the office of respondent Town Clerk in Orangetown, New York, to request a marriage license. Each couple sought a civil marriage license and then intended to have the marriages solemnized in accordance with Domestic Relations Law article 3. The Town Clerk informed the couples that they would not be given an application and instead handed petitioners a copy of a letter advising them that, “based on the opinions of the New York State Attorney General and the Department of Health, I am not legally authorized as Town Clerk to issue marriage licenses to same sex couples.”
The Town Clerk’s letter was predicated on a letter dated February 27, 2004 from respondent DOH, which advised municipal *903 clerks of its opinion that “New York law does not authorize the issuance of marriage licenses to persons of the same sex.” The DOH correspondence further cautioned that any person who failed to comply with this directive shall be guilty of a misdemeanor. The Town Clerk’s letter was also based on an informal opinion letter dated March 3, 2004 by the New York State Attorney General’s Office, which essentially provided that existing state law did not permit same-sex marriages, notwithstanding its recognition of constitutional concerns.
Thereafter, on March 12, 2004, petitioners filed this petition[1] seeking an order, pursuant to Domestic Relations Law article 3, directing respondent Town Clerk to issue marriage licenses to them and directing DOH to recognize and accept the marriage licenses as valid. They also seek a judgment declaring that the refusal to grant them licenses to marry on the basis that they are of the same sex constitutes a violation of their rights under the Equal Protection and Due Process Clauses of the New York State Constitution. Petitioners further ask this court to declare that discrimination based on sexual orientation is subject to heightened scrutiny rather than a rational basis review for purposes of constitutional analysis. Petitioners additionally contend that denying same-sex couples access to the institution of marriage deprives them of the tangible rights and benefits that accrue to married couples, such as inheritance rights, tax benefits, medical and insurance benefits and evidentiary privileges.
In their respective answers, respondents do not dispute petitioners’ assertions that they are each members of long-term, committed, stable and loving relationships, many of whom are raising children. Rather, they assert that the existing statutory scheme, which embodies the well-recognized historical tradition of opposite-sex marriage in our culture, does not countenance same-sex marriage and fully comports with federal law which does not recognize same-sex marriages 0see Defense of Marriage Act, Pub L 104-199, 110 US Stat 2419). They add that the rational basis standard applies to the constitutional analysis of petitioners’ claims and argue that promotion of only opposite-sex marriages satisfies that test, since it serves the legitimate state interest in preserving the ancient institution of marriage and fostering procreation within that institution.
*904 Existing Statutory Scheme
Petitioners first claim that same-sex couples are entitled to marriage licenses under the existing marriage statute because the Domestic Relations Law is overwhelmingly gender-neutral and does not expressly prohibit same-sex unions. However, a plain reading of the statute’s terms in light of its historical context, as well as judicial precedent of this state, leads to a contrary conclusion. The Domestic Relations Law defines marriage as a civil contract between two consenting parties who are legally capable of entering into a contract and contains an age requirement (Domestic Relations Law §§ 10, 15). The parties to a marriage must obtain a valid marriage license, issued by a municipal clerk, and the license must be presented to a person authorized to solemnize the marriage (Domestic Relations Law § 13). Prior to issuing a marriage license, the town clerk must determine whether the applicants are legally competent to marry (Domestic Relations Law § 15).
While the statute does not state that only persons of the opposite sex may enter a marriage contract, the interpretation of the statute advanced by petitioners is at odds with the agelong and virtually universal understanding of the term “marriage,” which is “the state of union between persons of the opposite sex” (Matter of Cooper, 187 AD2d 128, 131 [1993], appeal dismissed 82 NY2d 801 [1993]; see also Black’s Law Dictionary 986 [7th ed 1999] [“marriage” defined as “the legal union of a man and woman as husband and wife”]). Therefore, where, as here, the term marriage has traditionally referred to opposite-sex unions, and the statute contains no other expression indicating that same-sex unions were contemplated, standard principles of statutory construction warrant that the court carry out the intention of the Legislature by according the statutory language its natural, historic and obvious meaning. (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 76, 94.)
That only opposite-sex unions are contemplated by this statutory scheme is made clear by the Legislature’s repetitive use of gender-specific terms in core components of the Domestic Relations Law. Specifically, the Domestic Relations Law requires that a marriage be solemnized by each person declaring “that they take each other as husband and wife” (Domestic Relations Law § 12), and that the clerk obtain information from the “bride” and “groom” during the application process (Domestic *905 Relations Law § 15 [1] [a]).[2] Statutory provisions relating to annulments, divorces and separation contain similar references to the terms “husband” and “wife” (see Domestic Relations Law §§ 50, 73 [1]; § 140 [a], [e]; §§ 170, 175, 200, 221, 248). It is a basic tenet of statutory construction that all parts of an act are to be read consistently and construed together. (Statutes §§ 97, 98.)
Although petitioners attempt to dismiss the use of those gender-sensitive terms as insignificant, claiming that they appear only in “secondary provisions” of the Domestic Relations Law, the court finds the terms appear in provisions that are central to the conduct and dissolution of the institution of marriage, and fully reflect the intent of the drafters of this legislation that the marriages to be given state recognition are those involving opposite-sex unions. Numerous courts in this state that have had occasion to consider the scope of the right to marry under the Domestic Relations Law’s provisions have similarly concluded that the right to marry is limited to couples of the opposite sex. (See Raum v Restaurant Assoc., 252 AD2d 369 [1998], appeal dismissed 95 NY2d 824 [2000]; Matter of Cooper, 187 AD2d 128 [1993]; Langan v St. Vincent’s Hosp., 196 Misc 2d 440 [2003]; Anonymous v Anonymous, 67 Misc 2d 982 [1971]; Matter of Robert P., 117 Misc 2d 279 [1983], affd 97 AD2d 991 [1983], affd 63 NY2d 233 [1984]; see also Levin v Yeshiva Univ., 96 NY2d 484, 503 [2001] [Kaye, Ch. J., dissenting in part] [observing that “homosexual students . . . cannot marry”]; Storrs v Holcomb, 168 Misc 2d 898 [1996], dismissed 245 AD2d 943 [1997] [dismissed for failure to join necessary party].) In the State of Vermont, where a statutory scheme has been enacted to recognize and govern same-sex civil unions, the statute acknowledges that the term “marriage” is reserved solely for opposite-sex unions. (See Vt Stat Ann, tit 15, § 1201 [4]; Langan v St. Vincent’s Hosp., 196 Misc 2d at 450.)
Had the Legislature intended to authorize same-sex marriages and permit such a departure from long-standing principles, it would have done so in unambiguous terms. It is not for the court to imply in the existing marriage statute such “a radical innovation in the law.” (Statutes § 74, at 158.)
Based on these principles, the court concludes that the existing marriage statutes do not authorize or give respondent Town *906 Clerk the discretion to issue marriage licenses to same-sex couples. Accordingly, the court determines that respondent Town Clerk neither failed to perform a duty enjoined upon her by law nor proceeded without or in excess of her jurisdiction in denying petitioners’ request for marriage applications. (Matter of Kupersmith v Public Health Council of State of N.Y., 101 AD2d 918 [1984], affd 63 NY2d 904 [1984].) Therefore, the portion of the petition whereby petitioners seek an order compelling respondent Town Clerk to issue marriage licenses is denied.
It follows from the foregoing that the court also denies petitioners’ request for an order directing respondent DOH to accept such licenses as valid. The scope of this court’s review of respondent DOH’s advice to municipal clerks that they should not issue marriage licenses to same-sex couples under existing law is limited to a review of whether that determination was arbitrary and capricious, lacked rational basis or was otherwise affected by an error of law. (Matter of Pell v Board of Educ., 34 NY2d 222 [1974].) It is well settled that an administrative agency’s interpretation of its own regulations and of the statute under which it functions is entitled to great deference. (Matter of Salvati v Eimicke, 72 NY2d 784 [1988].) Based upon this court’s conclusion that under a plain reading of the marriage statute and judicial precedent the present statutory scheme does not countenance same-sex marriage, respondent DOH’s determination certainly withstands such review.
Constitutional Claims
Petitioners next contend that the denial of marriage licenses to same-sex couples discriminates on the basis of sexual orientation and constitutes a violation of article I, § 11 of the New York State Constitution. As respondent DOH asserts, the classification at issue here is not one based upon gender because both males and females are similarly situated under the challenged statute in that they are authorized to marry only persons of the opposite sex, but is more appropriately characterized as one based upon sexual orientation. (Matter of Cooper, 187 AD2d 128, 133 [1993]; Baker v Nelson, 291 Minn 310, 191 NW2d 185 [1971], appeal dismissed 409 US 810 [1972]; Dean v District of Columbia, 653 A2d 307 [DC 1995].) In Matter of Cooper (supra), the Appellate Division, Second Department, determined that the classification at issue, based on an interpretation of the Domestic Relations Law as prohibiting members of the same sex from obtaining marriage licenses, will be presumed to be valid *907 and upheld if it is rationally related to a legitimate state interest. Based upon the Second Department’s determination that the rational basis test, rather than heightened or strict scrutiny, applied under these circumstances, this court declines petitioners’ request to apply heightened scrutiny, applicable when reviewing classifications based on gender. Furthermore, this court will not entertain the position advocated by petitioners that this court should hold that homosexuals constitute a suspect class and that strict scrutiny analysis is applicable.
Applying the rational basis test, this court concludes that preserving the institution of marriage for opposite-sex couples serves the valid public purpose of preserving the historic institution of marriage as a union of man and woman, which, in turn, uniquely fosters procreation. (Matter of Cooper, supra; Lawrence v Texas, 539 US 558, 585 [2003] [O’Connor, J., concurring] [describing “preserving the traditional institution of marriage” as a legitimate state interest].)
Accordingly, given that petitioners have not negated “every conceivable basis which might support” the marriage statute, their equal protection challenge fails. (Affronti v Crosson, 95 NY2d 713, 719 [2001], cert denied sub nom. Affronti v Lippman, 534 US 826 [2001].)
Same-sex marriage is not a fundamental right protected by the Due Process Clause of the New York State Constitution (art I, § 6). The institution of marriage is a fundamental right founded on the distinction of sex and the potential for procreation. (Loving v Virginia, 388 US 1 [1967]; Zablocki v Redhail, 434 US 374 [1978]; Skinner v Oklahoma, 316 US 535 [1942].) Homosexual marriages do not fall within those guideposts or serve such ends. (Dean v District of Columbia, 653 A2d 307 [DC 1995].) Petitioners ask this court to rule that “tradition” is an invalid basis to uphold the ban on homosexual marriage. However, fundamental rights are precisely defined as those “deeply rooted in this Nation’s history and tradition.” (Moore v City of E. Cleveland, 431 US 494, 503 [1977].) For that reason, the courts are necessarily reluctant to expand the scope and definition of fundamental rights. Exercising such restraint here, this court declines petitioners’ request to include in those rights, considered fundamental to our concept of ordered liberty, the right to marry a person of the same sex. (Washington v Glucksberg, 521 US 702 [1997].) Since the statutory scheme at issue does not burden a fundamental right, it must be found constitutional if it bears a rational relationship to the legitimate *908 governmental interest being served. For the aforementioned reasons, this State’s issuance of marriage licenses only to heterosexual couples is rationally related to legitimate interests in preserving the traditional and legal concept of marriage.
Accordingly, no due process violation results from application of this statute to preclude same-sex marriages.
The court’s denial of these constitutional claims is not to be equated with moral disapproval of homosexuality. The morality of same-sex relationships is not at issue here.
Marriage is a legal status subject to the control of the Legislature. (Maynard v Hill, 125 US 190 [1888]; People v Allen, 27 NY2d 108 [1970]; Langan v St. Vincent’s Hosp., 196 Misc 2d 440 [2003].) It is well within the purview of the Legislature to enact laws recognizing and governing civil unions between persons of the same sex. (Statutes § 2.)
In fact, the New York State Legislature is presently considering several bills designed to amend the Domestic Relations Law with respect to this precise subject. Some proposals expressly provide that same-sex marriages are “absolutely void,” regardless of whether solemnized or recognized in another jurisdiction 0see NY Senate Bill S 2220; NY Assembly Bill A 2998), while another proposes just the opposite, that is, to amend the Domestic Relations Law to provide that same-sex marriages are valid (see NY Assembly Bill A 7392). Furthermore, another Assembly Bill proposes to amend the Domestic Relations Law by replacing the term “marriage” with the term “civil union” (NY Assembly Bill A 10551).
It is the Legislature that is the appropriate body to engage in the studied debate that must necessarily precede the formulation of social policy with respect to same-sex marriage and the decision to extend any or all rights and benefits associated with marriage to same-sex couples, and, in turn, the amendment or expansion of the laws presently governing the institution of marriage in New York.
Accordingly, the petition is denied in all respects.

. On June 4, 2004, this court denied a motion by four individuals and the New York Family Policy Council, a nonprofit educational organization, for permission to intervene.

. The term “husband” is defined as “[a] married man” (Black’s Law Dictionary 746 [7th ed 1999]). The term “wife” is defined as “[a] woman united to a man by marriage” (Black’s Law Dictionary 1598 [6th ed 1990]).